ST. BENEDICT'S DEVELOPMENT
COMPANY, a general partnership,
Plaintiff and Appellant,

v.

ST. BENEDICT'S HOSPITAL, a Utah
nonprofit corporation, and The Boyer
Company, a Utah corporation, Defendants and Appellees.

No. 890449.

Supreme Court of Utah.

May 6, 1991.

John K. Mangum, Arthur H. Nielsen, Salt Lake City, for plaintiff and appellant.

Thomas L. Kay, Steven J. Aeschbacher, Salt Lake City, for St. Benedict's Hosp.

Richard D. Burbidge, Stephen B. Mitchell, Salt Lake City, for The Boyer Co.

DURHAM, Justice:

St. Benedict's Hospital (the hospital) leased certain property near its facility to St. Benedict's Development Company (the development company) on which the development company has built and now operates two professional office buildings serving doctors at the hospital. Subsequently, the hospital leased other property nearby to The Boyer Company (Boyer) to construct a third medical office building. The development company brought this action against the hospital, seeking damages and injunctive relief for breach of implied and express contract provisions, and against both the hospital and Boyer for damages for interference with present and prospective economic relations. Both defendants filed motions to dismiss pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. After briefing and oral argument, the trial court granted the motions to dismiss. The development company appeals that action.

A rule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts. 61A Am.Jur.2d *Pleading* § 227 (1981). When determining whether a trial court properly granted a rule 12(b)(6) motion to dismiss, we accept the factual allegations in the complaint as true and consider them and all reasonable inferences to be drawn from them in a light most favorable to the plaintiff. *Colman v. Utah State Land Board*, 795 P.2d 622, 624 (Utah 1990); *Lowe v. Sorenson Research Co.*, 779 P.2d 668, 669 (Utah 1989). In light of the standard of review, we state the facts in a light most favorable to the party against which the rule 12(b)(6) motion was brought. *See State v. Verde*, 770 P.2d 116, 117 (Utah 1989). Because the propriety of a 12(b)(6) dismissal is a question of law, we give the trial court's ruling no deference and review it under a correctness standard. *Lowe*, 779 P.2d at 669 (citing *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987); *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985)).

## I. STATEMENT OF THE FACTS

The following facts are relevant to our consideration of this case.[1] On July 6, 1977, the hospital, as lessor, and the predecessor in interest to the development company, as lessee, entered into a lease agreement (the original lease). The original lease calls for the lessee to construct, operate, and maintain a medical office building on land owned by and immediately adjacent to the hospital. The contemplated building is required to accommodate at least fourteen tenants. Provision is made for expansion "as required by tenant demand." The lease has a term of fifty-one years and gives the lessee an option to renew for two additional ten-year periods. Rent of one dollar is recited, the amount being nominal in recognition of the fact that the professional building is "essential to the success of the hospital."

The building was intended to provide office space for medical practitioners using hospital facilities. The original lease restricts the tenants to whom the lessee may sublease; tenancies are unqualifiedly limited to medical practitioners and, "[s]o far as practicable, in view of tenancy demand," to members of the professional staff of the hospital. It is alleged in the complaint that at all times since they entered into the original lease,

> the parties acted upon the express and implied condition and understanding that the operation of the [hospital and the professional building] would be conducted for the mutual economic advantage and benefit of the parties, and that neither party would conduct itself in such a way as to cause diminution of patients of the hospital or tenants of the professional building, or economic loss to the other.

On June 22, 1979, the hospital and the development company entered into another agreement (the follow-up agreement) contemplating the construction of a second building (the new office building) adjacent to the building described in the original lease. The fourth "WHEREAS" clause of the follow-up agreement states, "[I]t is in

---

**1.** The complaint incorporates by reference the described contracts.

the mutual interest of the parties to obtain and retain satisfactory professional tenants in the New Office Building." That agreement also expressly requires the hospital to help the development company obtain tenants for the new office building. Specifically, the hospital agrees to "actively assist the [development company] in acquiring and holding good tenants until such time as the New Office Building is completely occupied" and guarantees payment of rent for one-third of the net leasable area of the building until it is two-thirds occupied. In addition, the hospital agrees to "diligently endeavor" to obtain sublessees who will refer patients to the hospital. Only in the event such efforts fail does the agreement give the development company the right to sublease to "business services of professionals not directly related to the hospital."

Several years after the execution of the follow-up agreement, with several other agreements executed in between,[2] the hospital and Boyer publicly announced the construction of a third professional building on hospital property near the buildings leased to the development company. Subsequently, certain tenants notified the development company that they did not intend to renew their leases, but would remain only on a month-to-month basis, with the intent of moving into the new building once it was completed. In June 1989, the development company brought this action seeking injunctive relief and damages against the hospital and Boyer.

In the first cause of action stated in the complaint, the development company seeks injunctive relief for breach of implied and expressed provisions of its several contracts with the hospital. The complaint alleges that the hospital breached its express duty to help the development company acquire and retain tenants for the new office building. In addition, there are two provisions which the development company seeks to have us imply into its contracts with the hospital. The first is a restrictive covenant preventing the hospital from constructing a new professional building on its property until the buildings leased by the development company are fully occupied and then only by first offering the development company the opportunity to construct the additional facility. The development company also seeks injunctive relief in its first cause of action for a breach of the implied covenant of good faith and fair dealing.

The second cause of action alleges that the development company is entitled to damages because the hospital's acts and conduct violated express provisions of the contracts between the parties. That claim also seeks damages for a breach of the implied covenant of good faith and fair dealing. The third cause of action seeks additional damages against both the hospital and Boyer for tortious interference with the development company's present and prospective economic relations with its sublessees.

The trial judge granted defendants' motions to dismiss the first and second causes of action *with* prejudice. The third cause of action was dismissed *without* prejudice. Although the development company was given the opportunity to amend its complaint as to the third cause of action, it chose instead to file this appeal.

## II. IMPLIED RESTRICTIVE COVENANT

In its first cause of action, the development company alleges that the agreements between the hospital and the development company contain an implied covenant prohibiting the hospital from proceeding with the construction of a third professional building on its property until (1) the exist-

**2.** Specifically incorporated into the development company's complaint as exhibits C and D respectively are a "Replacement Lease 'Phase II Property'" dated December 14, 1981, and a "Declaration of Restrictions, Easements and Common Area Maintenance" of the same date. Although these documents are useful to develop a general understanding of the course of dealing between the parties, nothing contained in the documents adds directly to the weight of the development company's arguments. For this reason, we have not included them in our discussion of this case even though, as part of the complaint, they are among the factual allegations we may consider on this appeal.

ing buildings are completely occupied, and (2) it has first offered the development company the opportunity to build the additional building. The trial court found that there was no implied covenant to that effect.

■■■ Where expressly stated, restrictive covenants are not favored in the law and are strictly construed in favor of the free and unrestricted use of property. *Robbins v. Finlay*, 645 P.2d 623, 627 (Utah 1982); *Parrish v. Richards*, 8 Utah 2d 419, 421, 336 P.2d 122, 123 (1959); *Freeman v. Gee*, 18 Utah 2d 339, 345, 423 P.2d 155, 159 (1967). Generally, *express* restrictive covenants are upheld only "where they are necessary for the protection of the business for the benefit of which the covenant was made and no greater restraint is imposed than is reasonably necessary to secure such protection." *Allen v. Rose Park Pharmacy*, 120 Utah 608, 614, 237 P.2d 823, 826 (1951). Under certain extreme circumstances, a restrictive covenant may arise by implication from the language of a deed or lease or from the conduct of the parties. 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* § 173 (1965). As a general rule, however, implied covenants are not favored in the law. *Id.* at § 12; *Brown v. Safeway Stores, Inc.*, 94 Wash.2d 359, 617 P.2d 704 (1980). In order for a restrictive covenant to be implied, the support for it must be "plain and unmistakable" or it must be "necessary" as a matter of law. 20 Am.Jur.2d at § 173.

■■■ In this case, there is no plain and unmistakable language in the relevant contracts which would support the restrictive covenant the development company seeks to have us imply. There is no language in the agreements between the development company and the hospital which prevents the hospital from using its own property to construct a new professional building or from dealing with Boyer or any other third party with respect to the construction, development, or leasing of a new building. Nor is there any language giving the development company a right of first refusal to construct a new building. Further, there is no legal necessity to imply a restrictive

covenant to effectuate the intent of the parties. *See Allen*, 120 Utah at 617, 237 P.2d at 827–28 (enforceability of express covenant not to compete necessary for employer to retain goodwill after employee's termination). The contracts are detailed and sophisticated. There is no indication that the parties intended to include a restriction on the hospital's right to build on its own property. If that is what they intended, they could have done so expressly.

Without language showing the hospital's intent to grant the development company an exclusive privilege to construct and operate professional buildings serving the hospital, there can be no restrictive covenant requiring the hospital to refrain from building on its own property. Nor is the hospital obligated not to permit other property owned by it to be used for a business which would compete with that of the development company. *See* Annotation, *Implied covenant in lease for business purposes, that lessor will not compete in business activity for conducting of which lessee leased the premises*, 22 A.L.R.2d 1466 (1952). There is no basis in law for the restrictive covenant which the development company asks us to find by implication in its agreements with the hospital. It is, however, possible that the hospital's action in assisting in the construction of a professional building which would compete with those leased by the development company may violate other covenants expressed in or implied from the agreements between and conduct of the parties.

### III. EXPRESS OBLIGATIONS TO ASSIST IN OBTAINING TENANTS

■■■ The June 22, 1979 agreement between the hospital and the development company imposes specific duties on the hospital, requiring it to help the development company obtain tenants for the new office building. In particular, the agreement requires the hospital to "actively assist the [development company] in acquiring and holding good tenants until such time as the new office building is completely occupied"

and to "diligently endeavor" to obtain sublessees for the new office building who would refer patients to the hospital. In its complaint, the development company alleges that the hospital breached those express covenants by advertising the construction of the proposed building and by soliciting the development company's existing tenants for occupancy in the proposed building.

Defendants have pointed out that the complaint does not allege that the new office building was never fully occupied. We think that the pleading is sufficient to state a claim for breach of the express covenants by alleging that there (1) were five vacancies at the time the complaint was filed, and (2) was no reasonable source of tenants to occupy the proposed building without taking tenants from the development company's existing buildings. Although the express covenants and the advertisement and solicitation of tenants for the proposed building are not necessarily mutually exclusive, there is an implication of breach that arises from the hospital's alleged actions. It is difficult to imagine a scenario where a party could be found to be "diligently endeavoring" to obtain and retain tenants for one building while at the same time encouraging the solicitation of the existing tenants for a competing building.

The courts are a forum for settling controversies, and if there is any doubt about whether a claim should be dismissed for the lack of a factual basis, the issue should be resolved in favor of giving the party an opportunity to present its proof. *Colman,* 795 P.2d at 624 (citing *Baur v. Pacific Fin. Corp.,* 14 Utah 2d 283, 284, 383 P.2d 397, 397 (1963)). Here, the trial court did not specifically address the question of whether the hospital breached its express promise to aid the development company in acquiring and retaining tenants for the new office building. If it had, the court would have found that the complaint states a claim for such a breach.

## IV. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In its first cause of action, the development company asserts that it is entitled to injunctive relief because the hospital's participation in the construction of an additional professional building is a breach of the hospital's implied duty of good faith and fair dealing. Similarly, the second cause of action seeks damages for the hospital's failure to deal with the development company in good faith and to treat it fairly. In granting defendants' motions to dismiss the complaint, the trial court did not consider these claims separately from the other breach of contract claims. We think it should have. We hold that, as a matter of law, the development company's complaint states a claim for a breach of the implied covenant of good faith and fair dealing and defendants' motion to dismiss that claim was improperly granted.

In this state, a covenant of good faith and fair dealing inheres in most, if not all, contractual relationships. *See, e.g., Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 798 (Utah 1985) (first-party insurance contract); *Resource Management Co. v. Weston Ranch & Livestock Co.,* 706 P.2d 1028, 1037 (Utah 1985) (mineral development agreement); *Leigh Furniture and Carpet Co. v. Isom,* 657 P.2d 293, 311 (Utah 1982) (contract for sale of a furniture business); *Rio Algom Corp. v. Jimco Ltd.,* 618 P.2d 497, 505 (Utah 1980) (uranium lease); *Zion's Properties, Inc. v. Holt,* 538 P.2d 1319, 1321 (Utah 1975) (real estate contract for commercial property); *Ted R. Brown and Assoc. v. Carnes Corp.,* 753 P.2d 964, 970 (Utah Ct.App.1988) (sales agreement). *But see Berube v. Fashion Centre, Ltd.,* 771 P.2d 1033, 1051–52 (Utah 1989) (Zimmerman, J., concurring in the result) (rejecting the application of the covenant in a contract for employment at will). For commercial contracts, a covenant of good faith is statutorily imposed. Utah Code Ann. § 70A–1–203. Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract. *Bastian v. Cedar Hills Investment & Land Co.,* 632

P.2d 818, 821 (Utah 1981); *Ferris v. Jennings,* 595 P.2d 857 (Utah 1979). A violation of the covenant gives rise to a claim for breach of contract. *Beck,* 701 P.2d at 798.

■■■■■ An examination of express contract terms alone is insufficient to determine whether there has been a breach of the implied covenant of good faith and fair dealing. S. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith,* 94 Harv.L.Rev. 369, 371 (1980). To comply with his obligation to perform a contract in good faith, a party's actions must be consistent with the agreed common purpose and the justified expectations of the other party. Restatement (Second) of Contracts § 205 comment a (1981). The purpose, intentions, and expectations of the parties should be determined by considering the contract language *and* the course of dealings between and conduct of the parties.

■■■■ Here, in addition to the hospital's express promises, the language in the agreements and the parties' conduct indicate an intent to cooperate in acquiring and retaining tenants for both of the buildings leased by the development company. The alleged facts indicate that the hospital did not proceed in a manner consistent with the justified expectations of the development company or the intentions of the parties. The hospital's encouragement of a competing office building suggests that there may have been a breach of the implied covenant of good faith and fair dealing. *See Ruff v. Yuma County Transp. Co.,* 690 P.2d 1296, 1298 (Colo.Ct.App.1984) (buyer's actions breached implied covenant of good faith because they were inconsistent with express contract provision requiring parties to cooperate and use best efforts to achieve condition precedent to the transfer which was subject of agreement). The complaint clearly alleges facts sufficient for such a claim.

## V. INTERFERENCE WITH PRESENT AND PROSPECTIVE ECONOMIC RELATIONS

In the third cause of action, the complaint contains a prayer for damages against both the hospital and Boyer based on a claim of tortious interference with present and prospective economic relations. The trial judge granted defendants' motions to dismiss this cause of action without prejudice. Although the development company was given the opportunity to amend its complaint as to that claim, it chose instead to file this appeal. We hold that the trial judge properly granted defendants' motions to dismiss the third cause of action as it is presented in the development company's unamended complaint.

■■■■ We first recognized the tort of intentional interference with economic relations in *Leigh Furniture and Carpet Co. v. Isom,* 657 P.2d 293 (Utah 1982). The tort protects both existing contractual relationships and prospective relationships of economic advantage not yet reduced to a formal contract. *Id.* at 302. In *Leigh Furniture,* we established three requirements for a plaintiff to sustain a claim for intentional interference with economic relations. A plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff. *Id.* at 304. The development company's claim is based on the following facts.

After the hospital and Boyer publicly announced the construction of the proposed professional building on hospital property near the buildings built and leased by the development company, certain tenants of the existing buildings notified the development company that they did not intend to renew their leases. The tenants indicated that they would continue to occupy their current quarters on a month-to-month basis, with the intent of moving into the proposed building once it was completed. The development company argues that defendants' actions constituted a tortious interference in its present and future relations with its sublessees. We treat first the question of the development company's *existing* contractual relations with its tenants.

A party is subject to liability for an intentional interference with *present* contractual relations if he intentionally and improperly causes one of the parties not to perform the contract. Restatement (Second) of Torts § 766 (1979). There is no allegation in the complaint that any existing sublease between the development company and its tenants was breached or that the performance under any of those subleases was in any way impaired by defendants' actions. With regard to the existing contracts, therefore, the development company has not satisfied the first prong of the *Leigh Furniture* test. It has not shown an intentional interference on the part of the hospital or Boyer. Without more, no claim for interference with *present* contractual relations can lie.

We next look at the development company's claim that defendants intentionally interfered with its *prospective* economic relations. The complaint alleges that defendants solicited the development company's sublessees for tenancies in the proposed building and, as a result, those sublessees did not renew their existing leases. The allegation of solicitation, being an intentional interference with prospective contractual relations, satisfies the first element of the *Leigh Furniture* test. The second prong of that test requires a showing that the hospital's and Boyer's intentional interference with the renewal of the subleases was for an improper purpose or accomplished by the use of improper means.

Improper purpose is established by a showing that the actor's predominant purpose was to injure the plaintiff. *Leigh Furniture*, 657 P.2d at 307. An immediate intent to injure a competitor may be motivated and outweighed by a legitimate long-range interest in furthering one's own economic condition. *Id.* In the instant case, the agreements establish the economic interest of the hospital in having professional office space to serve its admitting physicians. Similarly, Boyer, a commercial enterprise and stranger to any contract between the hospital and the development company, has a legitimate interest in competing for the future business of the development company's tenants. In its complaint, the development company alleges on information and belief that Boyer and the hospital "in planning and proceeding with the proposed development of an additional professional building on the Defendant Hospital's property ... acted knowingly, willfully and in concert with the intent and purpose of depriving Plaintiff of its rights to the continued contractual relations with tenants." There is no allegation that defendants' desire to harm the development company predominated over their legitimate economic motivations. The damages alleged by the development company, a loss of tenants, is an "inevitable byproduct of competition." *Id.* The development company has not, therefore, established that defendants acted with an improper purpose in this case.

Improper means is an alternative to improper purpose under the second prong of the *Leigh Furniture* test. Improper means are present "where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules." *Id.* at 308. Improper means include "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *Id.* (quoting *Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 210 n. 11, 582 P.2d 1365, 1371 n. 11 (1978)). "Means may also be improper or wrongful because they violate 'an established standard of a trade or profession.'" *Id.* Here, there are no facts alleged in the complaint showing any improper means used by defendants to solicit the tenants of the development company's professional buildings. The development company has, as a result, failed to satisfy the second prong of the *Leigh Furniture* test. For this reason, the third cause of action falls short of stating a claim for tortious interference with economic relations and was properly dismissed as to both defendants.

## VI.  CONCLUSION

The trial court properly granted defendants' motions to dismiss the development company's complaint with regard to its request for injunctive relief and damages for breach of an implied restrictive covenant. That court's action was also appropriate with regard to the third cause of action seeking damages for tortious interference with economic relations.  As to those issues, we affirm the trial court's grant of defendants' motions to dismiss.

Under the factual allegations of its complaint, the development company *has* stated a claim against the hospital for breach of express contractual provisions and for breach of the implied covenant of good faith and fair dealing.[3]  As to those claims, we vacate the motion to dismiss and remand for proceedings consistent with this opinion.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ.

---

**3.**  Damages permissible for a cause of action in contract for breach of express covenants or the implied covenant of good faith and fair dealing include all types of reasonably foreseeable consequences naturally flowing from the breach.

*Berube v. Fashion Centre, Ltd.,* 771 P.2d 1033 (Utah 1989) (citing *Beck,* 701 P.2d at 799)).  If warranted, injunctive relief may be available to the injured party.