2011 UT App 304

**Lewis J. PINTAR and Afton B. Pintar, Plaintiffs and Appellants,**

v.

**Martin HOUCK; Darlene Houck; Susan Morgan; Utah County; Tonya Houck; Kay Bryson; Timothy Barnes; and Does 5–50, Defendants and Appellees.**

**No. 20100443–CA.**

Court of Appeals of Utah.

Sept. 1, 2011.

Jason L. Pintar, San Jose, California; and Craig Carlile, Douglas Matsumori, and Brent D. Wride, Salt Lake City, for Appellants.

Martin Houck and Darlene Houck, Spanish Fork, Appellees Pro Se; and Kathleen M. Liuzzi, Salt Lake City, for Appellees Susan Morgan and Utah County.

Before Judges McHUGH, VOROS, and ROTH.

## MEMORANDUM DECISION

ROTH, Judge:

¶1 Plaintiffs Lewis J. Pintar and Afton B. Pintar appeal the district court's decision to dismiss their claims against Defendants Utah County Sheriff's Deputy Susan Morgan and Utah County (collectively, the Utah County Defendants) as well as the district court's decision to grant summary judgment to Defendants Martin Houck and Darlene Houck. We affirm in part and reverse and remand in part.[1]

1. Because this is an appeal from the district court's grant of a motion to dismiss and grant of summary judgment, we recite the facts favorably to the Pintars. *See Sanderson v. First Sec. Leas-* *ing Co.*, 844 P.2d 303, 304 (Utah 1992) ("In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in a light most favorable to the non-

¶ 2 This case arises out of a dispute between the Pintars and the Houcks concerning the Pintars' use of irrigation water. The Pintars and the Houcks own adjoining properties on which they each reside. The topography of the property is such that water generally flows from the Pintars' property onto the Houcks' property. The Pintars' irrigation of their property had historically been without incident, but after the Houcks made certain improvements to their property, the Pintars' method of irrigation, though done no differently than in the past, resulted in flooding in the area of the Houcks' improvements.

¶ 3 In July 2004, the Houcks sent a letter to the Pintars complaining about the flooding caused by their irrigation water. The letter led to an ongoing escalation of tension that eventually led the Houcks to contact the Utah County Sheriff's Office in May 2006 to complain about an altercation between the neighbors. Deputy Morgan, a deputy with the Utah County Sheriff's Office, responded to the Houcks' complaint. The Houcks' daughter-in-law works for the Utah County Sheriff's Office, but it is unclear from the record whether the Houcks contacted the Sheriff's Office through their daughter-in-law or whether they discussed the relationship with Deputy Morgan or anyone else with the Sheriff's Office. In response to the Houcks' complaint, Deputy Morgan went to the Pintars' house and told them not to have any further contact with the Houcks. Nevertheless, between May 2006 and August 2006, the

Houcks contacted Deputy Morgan several other times, complaining about derogatory and threatening remarks and gestures Mr. Pintar had made to them. Deputy Morgan eventually composed a written report detailing the Houcks' complaints against Mr. Pintar. She did this without having interviewed the Pintars or otherwise investigating the legitimacy of the Houcks' complaints. The Pintars allege that Deputy Morgan's report contained significant inaccuracies about the Pintars' contacts with the Houcks, the most particular deficiency being her assertion that Mr. Pintar was involved in the May 2006 incident that led to the Houcks' original complaint when, in fact, Mr. Pintar was not present during that altercation.

¶ 4 In October 2006, based on Deputy Morgan's report, the Utah County Attorney filed an information charging Mr. Pintar with disorderly conduct and issued a criminal summons. Mr. Pintar complied with the summons and appeared at the Utah County Jail where, according to the Pintars, he was "book[ed], fingerprint[ed], photo[graphed], and arrest[ed]."[2] Mr. Pintar's photograph and booking information were then posted on the Utah County public website. In August 2007, the Utah County Attorney voluntarily dismissed the case based on a lack of evidence.

¶ 5 In November 2007, the Pintars filed a complaint against the Houcks and the Utah County Defendants. The Pintars' complaint alleged numerous causes of action, including a request for declaratory relief against the

moving party."); *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991) ("When determining whether a trial court properly granted a rule 12(b)(6) motion to dismiss, ... we state the facts in a light most favorable to the party against which the rule 12(b)(6) motion was brought.").

**2.** The Pintars have alleged that in complying with the criminal summons, Mr. Pintar was arrested. The criminal summons, however, required Mr. Pintar to appear at the Utah County Justice Court for a preappointed court date. The summons also refers to an "enclosed '[o]rder for [f]ingerprint [p]rocessing.'" Although that order for fingerprint processing is not, as far as we can find, included in the record, we assume that document is what the Pintars are referring to that required Mr. Pintar to appear at the Utah County Jail.

We note that persons responding to criminal summonses are not generally arrested. Indeed, the criminal summons itself states, "If you fail to obey this Summons, the Court may issue a warrant for your arrest," thus implying that those who comply with the summons will not be arrested. Nevertheless, the procedural posture of this particular issue is an appeal from a motion to dismiss, and so we therefore accept the facts as the Pintars alleged them in their complaint. *See St. Benedict's Dev. Co.*, 811 P.2d at 196 ("When determining whether a trial court properly granted a rule 12(b)(6) motion to dismiss, we accept the factual allegations in the complaint as true ... [and] state the facts in a light most favorable to the party against which the rule 12(b)(6) motion was brought.").

Houcks; claims of malicious prosecution and conspiracy under section 1983 of the United States Code against the Houcks and the Utah County Defendants; a civil conspiracy claim against the Houcks and the Utah County Defendants; and other claims not pertinent to this appeal. The Pintars' claim for declaratory relief arises out of the original dispute between the parties about the Pintars' use of irrigation water. The Pintars' other claims at issue here are generally based on their allegation that the Houcks and the Utah County Defendants had conspired to "deprive[ ] [Mr.] Pintar of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution" by "acting together under color of state law" to improperly instigate criminal proceedings against him without probable cause. *See generally* 42 U.S.C. § 1983 (2006) ("Every person who, under color of [law] ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...").

¶ 6 In March 2008, the Utah County Defendants filed a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure, which the district court granted in August 2008. *See generally* Utah R. Civ. P. 12(b)(6) (providing a defense for "failure to state a claim upon which relief can be granted"). In January 2010, the Houcks moved for summary judgment, which the district court granted in May 2010. *See generally* Utah R. Civ. P. 56(c) (providing that summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law"). The Pintars appeal.

### I. The Utah County Defendants' Motion To Dismiss

¶ 7 The Pintars contend that the district court incorrectly granted the Utah County Defendants' 12(b)(6) motion to dismiss their section 1983 claims. *See generally St. Benedict's Dev. Co. v. St. Benedict's Hosp.,* 811 P.2d 194, 196 (Utah 1991) (stating that a rule "12(b)(6) dismissal is a question of law" that is "review[ed] ... under a correctness stan-

dard"). In their complaint, the Pintars allege that the Utah County Defendants are liable under section 1983 for having deprived Mr. Pintar of his constitutional rights by wrongfully instigating criminal proceedings against him without probable cause. In granting the Utah County Defendants' motion to dismiss, the district court concluded that Utah County could not be liable for Deputy Morgan's conduct and that Deputy Morgan herself was entitled to qualified immunity.

### A. Utah County's Immunity

■ ¶ 8 The Pintars argue that the district court erred in concluding that Utah County was immune from suit under section 1983. The circumstances under which a local government can be held liable for actions of its employees under section 1983 are quite narrow:

> [A] local government may not be sued under [section] 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983.

*Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The requirement that the government be liable only for acts done under the aegis of "official policy" is "intended to distinguish acts of the municipality from acts of employees of the municipality and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (emphasis omitted).

■ ¶ 9 Further, section 1983 does not necessarily provide a remedy for injuries resulting from the decisions of even municipal officials. *See id.* at 481, 106 S.Ct. 1292 ("[N]ot every decision by municipal officers automatically subjects the municipality to [section] 1983 liability."). Rather, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish

municipal policy with respect to the action ordered." *Id.* Even the fact that the act complained of may be within an employee's or officer's discretion does not necessarily put it within the scope of section 1983 because "[t]he fact that a particular official— even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481–82, 106 S.Ct. 1292. "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482–83, 106 S.Ct. 1292. "[T]wo factors [are considered] in deciding whether an official is a final policymaker within his [or her] area of authority: first, whether [the] discretionary decisions are constrained by general policies enacted by others, and second, whether those decisions are reviewable by others." *Milligan–Hitt v. Board of Trus. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1228 (10th Cir.2008) (internal quotation marks omitted). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

■ ¶ 10 The Pintars argue that Deputy Morgan was an official policymaker for Utah County because, as a deputy in the Utah County Sheriff's Office, she is granted the authority to make a lawful arrest and the "discretion . . . to determine what constitutes a lawful arrest" as well as "the discretion . . . to determine what is reasonable or probable cause to make an arrest."[3] In this regard, the Pintars cite the United States Supreme Court for the proposition that "[m]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *See Pembaur*, 475 U.S. at 480, 106 S.Ct. 1292. However, the "appropriate circumstances" under which "a single decision by municipal policymakers" may establish municipal liability typically involve decisions by "properly constituted legislative bod[ies]" rather than a single decision by a single person. *See id.* And the Pintars have cited no authority in support of their position that official policy can be established by a single decision made by a single person, nor have the Pintars cited any authority for the proposition that a police officer's discretionary decision to arrest constitutes official municipal policy. *See generally Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 ("An appellate court is not a depository in which [a party] may dump the burden of argument and research." (alteration in original) (internal quotation marks omitted)).

¶ 11 Moreover, though Deputy Morgan is given some discretion in exercising the authority she holds as a deputy for the Utah County Sheriff's Office, as the district court concluded, she "cannot be considered a policy maker for Utah County because her actions, though discretionary, are still constrained by other policies, and because her decisions are reviewable by others." *See Milligan–Hitt*, 523 F.3d at 1228. Indeed, Deputy Morgan sent her report and recommendation that Mr. Pintar be charged with disorderly conduct to the Utah County Attorney for review before any final action was taken. We therefore conclude that the district court appropriately granted the Utah County Defendants' 12(b)(6) motion to dismiss the Pintars' section 1983 claims against Utah County on the basis that the County cannot be liable for

---

**3.** The Pintars' arguments on appeal are largely premised on the assertion that Mr. Pintar was arrested—and arrested by Deputy Morgan— when he complied with the criminal summons issued by the Utah County Attorney. We again note that it would be atypical for Mr. Pintar to be arrested in the course of responding to a criminal summons. *See supra* ¶ 4 n. 2. We further note that there is no evidence in the record, nor any allegation in the complaint, that Deputy Morgan delivered the summons or that she actually arrested Mr. Pintar when he appeared at the Utah County Jail; to the contrary, the Pintars allege in their complaint that Mr. Pintar received the criminal summons by substituted service and that he was arrested when he appeared at the jail in response to the summons. Thus, the Pintars' claims against Deputy Morgan, broadly read, appear to rest on their contention that Deputy Morgan did not have probable cause sufficient to support her decision to submit the matter to the Utah County Attorney, which put in motion the events that eventually led to Mr. Pintar being charged with disorderly conduct.

Deputy Morgan's actions because she is not an official policymaker for the County.

### B. Deputy Morgan's Qualified Immunity

¶ 12 The Pintars next argue that the district court erred in concluding that Deputy Morgan herself was entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To determine whether a government official is entitled to qualified immunity, two factors must be considered: whether "the facts ... alleged ... make out a violation of a constitutional right" and "whether the right at issue was clearly established at the time of ... [the] alleged misconduct." *Id.* at 232, 129 S.Ct. 808 (internal quotation marks omitted). "[A] right is clearly established ... [if] it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *receded from by Pearson*, 555 U.S. at 236, 129 S.Ct. 808 (rejecting the requirement that the two factors be considered in a particular order). A government official is entitled to qualified immunity unless both factors are established. *See Pearson*, 555 U.S. at 231–32, 129 S.Ct. 808. The reviewing court is not required to consider the two factors in any particular order. *See id.* at 236, 129 S.Ct. 808.

¶ 13 The Pintars argue that it should have been clear to Deputy Morgan that her conduct was unlawful because she failed to conduct even a rudimentary investigation into the Houcks' allegations against the Pintars-allegations that the Pintars assert were false. When confronted with an argument that a government official is not entitled to qualified immunity based on his or her use of false information, the issue is whether the official knew "that the [allegations] w[ere] false" or whether she evinced "a reckless disregard for [their] truthfulness."

*See Beard v. City of Northglenn*, 24 F.3d 110, 114 (10th Cir.1994) (considering whether officers were entitled to qualified immunity where they had submitted an "affidavit [that] contained false information that, if excised, would have negated probable cause" required for a warrant). Thus, even if the allegations are false, "our inquiry is focused neither on the existence nor the consequence of [the] error but on the intention behind it." *Id.* at 116.

¶ 14 Ultimately, the Pintars have failed to show that Deputy Morgan "knew that the [Houcks' allegations] w[ere] false or that [s]he had a reckless disregard for [their] truthfulness." *See id.* at 114. Deputy Morgan compiled a written report of the Houcks' complaints against Mr. Pintar and forwarded that report to the Utah County Attorney, apparently with a recommendation that Mr. Pintar be charged with disorderly conduct. There is no evidence that Deputy Morgan herself purposefully falsified the allegations against Mr. Pintar; rather, she simply relied upon the information she gathered from the Houcks. Although she did not interview the Pintars to assess their side of the story, there is nothing in the record to suggest that anything about the Houcks' story itself indicated that it was invented or otherwise unreliable. If, as the Pintars argue, the Houcks fabricated the allegations against Mr. Pintar, the Pintars have shown no reason why the falsity of the allegations should have been apparent to Deputy Morgan. Even if we acknowledge, however, the apparent deficiency of Deputy Morgan's investigation, "[t]he failure to investigate a matter fully ... rarely suggests a knowing or reckless disregard for the truth." *See id.* at 116. "To the contrary, it is generally considered to betoken negligence *at most.*" *See id.* (internal quotation marks omitted). And negligence alone is insufficient to establish a reckless disregard for the truth. *See id.* at 114–15. Although we must assume for purposes of our review that the Houcks' story was not truthful, *see St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991) ("When determining whether a trial court properly granted a rule 12(b)(6) motion to dismiss, we accept the factual allegations in the complaint as true...."), Deputy Mor-

gan's failure to conduct a complete and adequate investigation was not so egregious in itself that we may infer from her omission a "reckless disregard ... evincing obvious reasons to doubt the veracity of the allegations," *see Beard,* 24 F.3d at 116 (internal quotation marks omitted). Accordingly, Deputy Morgan's failure to conduct a more thorough investigation of the Houcks' allegations against the Pintars was not clearly unlawful.

¶ 15 The Pintars also argue that it should have been clear to Deputy Morgan that her conduct was unlawful because the Houcks' allegations against the Pintars, even if true, did not constitute the crime of disorderly conduct-the crime with which Mr. Pintar was charged. *See generally* Utah Code Ann. § 76-9-102(1)(b)(i) (2008) ("A person is guilty of disorderly conduct if ... intending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he ... engages in fighting or in violent, tumultuous, or threatening behavior...."). The Pintars' argument that the conduct alleged did not constitute a crime seems to rest in part on the fact that the disorderly conduct offense was later voluntarily dismissed by the Utah County Attorney for lack of evidence. However, simply because an offense is dismissed for lack of evidence does not mean that the underlying factual allegations could not possibly constitute a crime. The Pintars repeatedly argue that the alleged conduct did not constitute a crime, but they provide this court with no analysis in support of that assertion. *See generally Allen v. Friel,* 2008 UT 56, ¶ 9, 194 P.3d 903 (requiring appellants to provide "reasoned analysis" rather than just "bald citation[ ]" to authority). Although we do not decide the issue, we cannot say that the facts as alleged so obviously failed to constitute the crime of disorderly conduct that it should have been clear to Deputy Morgan that her conduct was unlawful.[4] Accordingly, we conclude that the

district court correctly granted the Utah County Defendants' 12(b)(6) motion to dismiss the Pintars' section 1983 claims, concluding that Deputy Morgan was entitled to qualified immunity.

## II. The Houcks' Motion for Summary Judgment

¶ 16 The Pintars next argue that the district court erred in granting the Houcks' motion for summary judgment. *See generally Sanderson v. First Sec. Leasing Co.,* 844 P.2d 303, 306 (Utah 1992) (stating that "summary judgment is a question of law" reviewed for correctness). In granting the Houcks' motion for summary judgment, the district court concluded that, as a matter of law, the Pintars had failed to present sufficient evidence to support their claims for civil conspiracy, conspiracy, and malicious prosecution. The district court also concluded that the Pintars' claim for declaratory relief was legally unsustainable.

### A. Civil Conspiracy, Conspiracy, and Malicious Prosecution Claims

¶ 17 In their complaint, the Pintars brought claims for civil conspiracy under Utah state law as well as for conspiracy and malicious prosecution under section 1983, alleging that the Utah County Defendants and the Houcks had conspired to deprive Mr. Pintar of his constitutional rights by wrongfully instigating criminal proceedings against him without probable cause. After the claims against the Utah County Defendants had been dismissed, the Houcks moved for summary judgment, which the district court granted. In granting the Houcks' motion for summary judgment the district court concluded that, as a matter of law, the Pintars had failed to present sufficient evidence to support their claims for civil conspiracy, conspiracy, and malicious prosecution. *See gen-*

---

4. We note here that Deputy Morgan herself did not file an information against Mr. Pintar. Rather, she forwarded her report to the Utah County Attorney, whose office is responsible for making the final decision whether to file an information. There is no allegation that her report conveyed anything more or less than what had been told to her by the Houcks. Thus, the decision to charge Mr. Pintar with disorderly conduct was a prod-

uct of Deputy Morgan's report followed by the independent decision of the Utah County Attorney. This additional level of review before charges were filed at least suggests that any error made by Deputy Morgan in assessing the criminal import of the facts was attenuated by another and final level of decision-making at the prosecutorial phase.

*erally id.* at 306 (providing that "the court retains the power to decide whether, as a matter of law, a reasonable jury could find that an" issue of fact exists); *Waddoups v. Amalgamated Sugar Co.,* 2002 UT 69, ¶ 35, 54 P.3d 1054 ("To overcome summary judgment, plaintiffs must offer at least some evidence that could be interpreted to satisfy the elements of the claim" of civil conspiracy.); *Harline v. Barker,* 912 P.2d 433, 439 (Utah 1996) ("[W]hen the facts are so tenuous, vague, or insufficiently established that determining [an issue of fact] becomes completely speculative, the claim fails as a matter of law," and summary judgment is appropriate. (internal quotation marks omitted)).

¶ 18 The essence of the Pintars' section 1983 claims is that the Houcks and the Utah County Defendants—specifically, Deputy Morgan—conspired to maliciously prosecute Mr. Pintar. Where plaintiffs allege that a private person is liable under section 1983, the plaintiffs must prove that the private defendants acted under color of state law. *See Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). To act "under color of state law for [section] 1983 purposes . . . the defendant [need not] be an officer of the State." *Id.* Rather, "[i]t is enough that he is a willful participant in joint action with the State or its agents." *Id.* Thus, "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting . . . under color of law for purpose of [section] 1983 actions." *Id.* at 27–28, 101 S.Ct. 183. Further, when plaintiffs bringing a section 1983 claim attempt to assert state action by alleging a conspiracy between public and private persons, the plaintiffs must allege "specific[ ] . . . facts tending to show agreement and concerted action" between the public and private persons. *See Hunt v. Bennett,* 17 F.3d 1263, 1268 (10th Cir.1994) (internal quotation marks omitted). Similarly, claims for conspiracy under section 1983 and civil conspiracy under Utah law both require the plaintiff to show that the defendants had a meeting of the minds or an agreement and acted in concert. *See Peterson v. Delta Air Lines, Inc.,* 2002 UT App 56, ¶ 12, 42 P.3d 1253 ("To prove civil conspiracy, . . . a meeting of the minds on the object or course of action" must be shown.

(internal quotation marks omitted)); *see also Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir.1989) (per curiam) (stating that to support a claim for conspiracy under section 1983, the plaintiff must "allege specific facts showing agreement and concerted action among defendants"). Because the Pintars' claims are based on a conspiracy between public and private persons to maliciously prosecute Mr. Pintar, they must have presented sufficient facts to show that the Utah County Defendants and the Houcks reached an agreement and acted in concert to achieve their common unconstitutional goal.

¶ 19 As the basis for their claims that the Houcks and the Utah County Defendants conspired to maliciously prosecute Mr. Pintar, the Pintars alleged in their complaint that the Houcks' daughter-in-law and Deputy Morgan both worked for the Utah County Sheriff's Office and had a "personal and friendly working relationship which influenced Deputy Morgan's . . . decisions." In granting summary judgment to the Houcks, the district court recognized that the relationship between Deputy Morgan and the Houcks' daughter-in-law was "[p]ivotal to the allegation that" a conspiracy existed. However, the Houcks' daughter-in-law and Deputy Morgan testified that although each was aware that the other worked at the Sheriff's Office, they did not know each other personally. Although the Pintars' complaint alleged a closer relationship, they provided no evidence to call this testimony into question, which led the district court to conclude that the Houcks' daughter-in-law and Deputy Morgan "were just shy of complete strangers." *See generally Hall v. Fitzgerald,* 671 P.2d 224, 226–27 (Utah 1983) ("[A]llegations . . . in the pleadings are not a sufficient basis for opposing summary judgment.").

¶ 20 The Pintars now argue that the district court erred in granting summary judgment to the Houcks because the court failed to construe the facts and the reasonable inferences arising from those facts in their favor. *See generally Sanderson,* 844 P.2d at 304 ("In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving party."). Specifi-

cally, the Pintars argue that the district court improperly focused on the relationship between the Houcks and Deputy Morgan and failed to consider other facts alleged, such as the ongoing hostility between the Houcks and the Pintars as well as Deputy Morgan's deficient investigation of the allegations against Mr. Pintar. The Pintars thus argue that these facts and the reasonable inferences arising therefrom provide a sufficient factual basis from which a jury could reasonably infer that the Houcks and the Utah County Defendants conspired to prosecute Mr. Pintar.

¶ 21 We agree with the district court that the relationship between the Houcks and Deputy Morgan was "pivotal" to the Pintars' claims. Although there may have been hostility between the parties and a deficient investigation by Deputy Morgan, the third leg of the Pintars' conspiracy stool was a relationship of some substance between Deputy Morgan and the Houcks. This relationship was not proven. Without the close relationship between Deputy Morgan and the Houcks' daughter-in-law that the Pintars alleged, the relationship that was shown between Deputy Morgan and the Houcks is simply too attenuated to establish the kind of agreement and concerted action required for the Pintars to prove their section 1983 or conspiracy claims; and it cannot reasonably be inferred from the facts before the district court that the Houcks and the Utah County Defendants reached an agreement or acted in concert. Rather, the Pintars' assertions amount to no more than speculation. *See generally Harline*, 912 P.2d at 439 ("[W]hen the facts are so tenuous, vague, or insufficiently established that determining [an issue of fact] becomes completely speculative, the claim fails as a matter of law." (internal quotation marks omitted)); *State v. Cristobal*, 2010 UT App 228, ¶ 16, 238 P.3d 1096 (explaining the distinction between reasonable inference and speculation). Accordingly, we conclude that the district court correctly granted summary judgment to the Houcks on the Pintars' claims for civil conspiracy, conspiracy, and malicious prosecution.

## B. Declaratory Relief

¶ 22 In granting the Houcks' motion for summary judgment on the Pintars' request for declaratory relief, the district court ruled that the Pintars' underlying claim was legally unsustainable. The Pintars' complaint asks that the district court issue a declaratory judgment determining the parties' "specific responsibilities and duties ... regarding the use and management of irrigation water between the properties." Specifically, from what we can discern from the record, the Pintars' claim for declaratory relief is based on their assertions that their use of irrigation water on their property has historical legitimacy and that their use of irrigation water is reasonable, thus requiring the Houcks to be responsible for protecting their own property from the effects of any runoff of the Pintars' irrigation water.[5]

¶ 23 In granting the Houcks' motion for summary judgment, the district court first concluded that the Pintars' historical usage argument was inapplicable to the issue of "whether the Pintars are entitled to allow irrigation water to run onto the [Houcks'] property." The district court recognized that the legal authority relied upon by the Pintars had to do with "an appropriator's right to continue use of [an] existing and historical method of diverting ... water," *see Wayment v. Howard*, 2006 UT 56, ¶ 13, 144 P.3d 1147 (citing *Salt Lake City v. Gardner*, 39 Utah 30, 114 P. 147, 152 (1911)). The court reasoned that water diversion cases were irrelevant to the Pintars' situation because "[d]iversion ... describes the method by which a water right holder gets water to his property" and does not address how the diverted water should be managed once it is used and allowed to flow onto another's property. The district court determined that other authority governing usage of irrigation water better "address[ed] the issues present-

---

**5.** We note that the Pintars' claim for declaratory relief "present[ed] a quandary for the [district] court" due to the vague nature of the complaint. The district court attempted to clarify its understanding of the Pintars' declaratory relief claim at the summary judgment hearing and during a telephone conference. Thus, our explanation of the Pintars' declaratory relief claim is primarily based on the explanation the Pintars provided to the district court.

ed here" and ruled that the Pintars' historical use argument was inapplicable. With this aspect of the district court's decision, we agree.

¶ 24 The district court then turned to the issue of whether the Pintars were entitled to allow irrigation water, once used, to run onto the Houcks' property. The court stated that it perceived the Pintars' request for declaratory relief to amount to an assertion that "they are entitled under the law to allow their irrigation water to run onto the [Houcks'] property" and "have no duty" to "use their water reasonably." The court concluded that "Utah law does not support" such a position because Utah has adopted "the doctrine of reasonable use for the discharge of surface waters." (Citing *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741, 743–45 (1971), *superseded by statute on other grounds as stated in Pigs Gun Club, Inc. v. Sanpete Cnty.*, 2002 UT 17, ¶ 14 n. 9, 42 P.3d 379.) And the reasonable use doctrine provides that when a person "interferes with the flow of surface water ... and such interference ... causes harm to a neighbor in the use and enjoyment of his land, ... liability depends on whether the invasion is unreasonable." *Id.* at 744 (citing Restatement (Second) of Torts: Interference with the Flow of Surface Waters § 833 cmt. a (1979)). The district court reasoned that the Pintars therefore "have a duty to use their water reasonably" and concluded that because "Utah law holds the opposite of the declaratory relief sought by the [Pintars, it could not] grant the relief ... [sought] as a matter of law."

¶ 25 Although we see no error in the district court's reading of the law, we conclude that it misperceived the Pintars' claim for declaratory relief. The Pintars asserted that the relief they sought was not simply a declaration that they were entitled to continue their irrigation practices without regard to their reasonableness but a determination that their use of irrigation water was in fact reasonable—a position consistent with Utah law. *See generally id.* at 743–45. Although the Pintars' complaint is not a model of clarity in this regard, when combined with the subsequent explanations elicited by the district court, the Pintars appear to have sufficiently stated a claim for declaratory relief under Utah law that ought to be further considered on the merits in order to clarify the various rights and responsibilities inhering in the use of irrigation water by one landowner that may flow onto the property of a neighbor. Resolution of this issue seems particularly important here where the irrigation issues between the Pintars and the Houcks appear to be ongoing and substantial, and have also been the catalyst of considerable collateral conflict. An action for declaratory relief is designed to resolve such controversies in order to curtail further problems of the kind that have occurred here. *See generally Miller v. Weaver*, 2003 UT 12, ¶ 15, 66 P.3d 592 (explaining that to be entitled to a declaratory judgment, there must exist "a justiciable controversy, ... parties whose interests are adverse, ... a legally protectible interest residing with the party seeking relief, and ... issues ripe for judicial determination"). We therefore reverse the district court's grant of summary judgment to the Houcks on the Pintars' claim for declaratory relief and remand for further proceedings to determine whether the Pintars' use of irrigation water is reasonable.[6]

¶ 26 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and J. FREDERIC VOROS JR., Judge.

---

6. The Pintars have also appealed the district court's denial of their motion to amend their complaint. However, we do not reach this issue because we perceive that our decision here has changed the landscape of the litigation enough to make ruling on the issue likely more confounding than clarifying. That said, the court on remand may wish to consider whether amendment of the complaint may be useful.