FILED
United States Court of Appeals
Tenth Circuit

February 26, 2019

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BANNER BANK, a Washington banking
corporation,

      Plaintiff - Appellee/Cross -
      Appellant,

v.

FIRST AMERICAN TITLE INSURANCE
COMPANY, a California corporation,

      Defendant - Appellant/Cross -
      Appellee.

Nos. 17-4098, 17-4112,
18-4035 & 18-4037

_____

**Appeals from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:16-CV-00200-BSJ)**
_____

Scott E. Gizer (Sophia S. Lau, of Early Sullivan Wright Gizer & McRae LLP; Los
Angeles, California, and Sara E. Bouley of Action Law LLC, Salt Lake City, Utah, with
him on the briefs), Early Sullivan Wright Gizer & McRae LLP; Los Angeles, California,
for Defendant - Appellant/Cross-Appellee.

Troy L. Booher, (Michael D. Zimmerman, Freyja R. Johnson and Dick J. Baldwin of
Zimmerman, Booher, with him on the briefs), Salt Lake City, Utah, for Plaintiff -
Appellee/Cross-Appellant.

_____

Before **PHILLIPS**, **KELLY**, and **CARSON**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Defendant-Appellant and Cross-Appellee First American Title Insurance Co. appeals from the district court's orders granting summary judgment in favor of and attorneys' fees to Plaintiff-Appellee and Cross-Appellant Banner Bank ("the Bank"[1]). The district court held that First American had a duty to defend and indemnify its insured (the Bank), breached the implied covenant of good faith and fair dealing, and was responsible for attorneys' fees in this case. This resulted in an award of damages ($675,000) plus attorneys' fees in an underlying lawsuit ($159,288), and consequential damages of attorneys' fees in this case ($130,411.50). The Bank cross-appeals in the event that the award of consequential damages was procedurally incorrect. Our jurisdiction arises under 28 U.S.C. § 1291 and we reverse.

**Background**

Wendell Jacobson was an insider of MSI, Inc., through which he controlled two related LLCs. To secure loans from the Bank for his businesses, Mr. Jacobson conveyed deeds of trust to the Bank as collateral. See 1 J.A. 39–69. The Bank then purchased a title insurance policy from First American to cover those deeds of trust. See id. at 71–94. Unfortunately for the Bank, Mr. Jacobson was apparently using his businesses to operate a Ponzi scheme. When the Securities and Exchange Commission filed an enforcement

---

[1] For simplicity's sake, Banner Bank and its predecessors are referred to as "the Bank" throughout. The title policy was originally issued to Far West Bank, one name under which AmericanWest Bank did business in Utah prior to its merger with Banner Bank. See 1 J.A. 71; Aplt. Br. at 13 n.2; Aplee. Br. at 6 n.1.

action against Mr. Jacobson, a Receiver was appointed to represent his creditors. Id. at 114–15. The Receiver then filed an action against the Bank challenging the conveyances. Id. at 114–17. Relying on the title policy, the Bank requested that First American defend it in the Receiver's action. Id. at 112. First American refused and explained that the Receiver's action fell outside the coverage of the policy. Id. at 134. The Bank responded to First American's denial and disputed First American's basis for refusing to defend. Id. at 136–38. First American reaffirmed its conclusion that it owed no duty to defend. Id. at 140–41. The Bank and the Receiver eventually entered a settlement for $675,000. Id. at 100–06. The Bank then brought this diversity action against First American.

The Bank's complaint contained five claims: (1) breach of contract for failure to indemnify, (2) breach of contract for failure to defend, (3) breach of the implied covenant of good faith and fair dealing, (4) contingent breach of contract or breach of implied covenant, and (5) declaratory relief. Id. at 26–32. On cross-motions for summary judgment, the district court granted summary judgment in favor of the Bank on its claims for (1) breach of contract for failure to indemnify, (2) breach of contract for failure to defend, and (3) declaratory relief. 12 J.A. 2815. The district court held that the claim for breach of the implied covenant of good faith and fair dealing was subsumed into its findings on the breach of express terms, and it found that it did not need to decide the contingent breach of contract claim. Id. The district court entered judgment consistent with those findings, but it did not rule on the Bank's other damages arguments related to prejudgment interest or consequential damages. Id. at 2816.

3

First American filed a notice of appeal to this court on June 7, 2017, id. at 2841; the Bank filed its own notice of appeal (along with a motion to extend time to file the notice) on July 13, 2017. Id. at 2859–67. Meanwhile in the district court, the Bank (1) renewed its motion for attorneys' fees from its summary judgment motion; (2) moved, in the alternative, under Rule 54(d) for attorneys' fees; and (3) moved under Rule 60 to set aside the judgment to ensure the district court kept jurisdiction until the damages issue was resolved. Id. at 2868–79.

On November 7, 2017, we ordered a limited remand for the district court to address the Bank's request for attorneys' fees. Order, Banner Bank v. First Am. Title Ins. Co., Nos. 17-4098 & 17-4112 (10th Cir. Nov. 7, 2017), ECF No. 10511740. On remand, the district court awarded the Bank attorneys' fees under its renewed motion for attorneys' fees and denied the motions under Rule 54(d) and Rule 60. 13 J.A. 3154–56. First American filed another notice of appeal from that decision. Id. at 3158–60.

**Discussion**

We review a summary judgment decision de novo, and we use the same standard the district court applied to determine if summary judgment was warranted. See Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1251 (10th Cir. 2015). In other words, we ask if the movant demonstrated there was no genuine dispute as to any material fact and the movant was entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The factual record and reasonable inferences that may be drawn from it are viewed in the light most favorable to the nonmoving party. See Birch, 812 F.3d at 1251. Cross-motions for

4

summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party.

## A. Breach of Contract for Duty to Defend

Under Utah law,[2] the duty to defend is determined under the so-called "eight corners" rule — the court analyzes only what is contained within the four corners of the policy and the four corners of the complaint. See Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co., 266 P.3d 733, 735–37 (Utah 2011). A court looks first to the policy language defining the scope of the duty to defend; it then looks to the face of the complaint and determines if the terms either establish or eliminate a duty to defend. Id.

We begin with the language of the policy. Two provisions are relevant. First, the policy includes a list of "covered risks." Among the covered risks is insurance against loss or damage "sustained or incurred by the Insured by reason of" "[a] defect in the Title caused by," among other things, "fraud" or "failure of any person or Entity to have authorized a transfer or conveyance." 1 J.A. 81. The covered risks are limited, however, by the policy's "exclusions from coverage." These matters are "expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise" as a result of one of them. Id. at 82. Among the

---

[2] We understand the parties to agree that Utah state law governs their dispute. See, e.g., Aplt. Br. at 17–18 (analyzing Utah law for insurance policy interpretation); Aplee. Br. at 17 n.2 (same); see also Edens v. Netherlands Ins. Co., 834 F.3d 1116, 1120 (10th Cir. 2016) (noting that in diversity cases, the substantive law of the forum state governs).

list of excluded matters is "6. [a]ny claim, by reason of operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien . . . is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy." Id.

The parties dispute whether the Receiver's complaint falls under exclusion 6. We must determine whether the Receiver's complaint is grounded in a "similar creditors' rights law." Was the Receiver asserting that the transaction creating the deed of trust was a fraudulent conveyance or fraudulent transfer? If so, then the litigation between the Receiver and the Bank was excluded from coverage under the policy and First American had no duty to defend. If, however, the complaint was ambiguous as to the nature of the legal basis for the action, then First American owed a duty to defend at least "until those uncertainties [could] be resolved against coverage." Benjamin v. Amica Mut. Ins. Co., 140 P.3d 1210, 1215 (Utah 2006).

To answer that question, we examine the language of the Receiver's complaint. The complaint's sole claim for relief was "pursuant to Utah Code Ann. § 25-6-1, et seq."[3] — Utah's Uniform Voidable Transactions Act (UVTA). 1 J.A. 116. The complaint alleged that Mr. Jacobson was an insider of two LLCs that obtained loans from the Bank, that neither LLC received "reasonably equivalent value" in exchange for the transfer, and that Mr. Jacobson's company MSI, Inc. (through which he controlled the two related

_____

[3] The relevant statutory provisions have subsequently been renumbered — they begin now at Utah Code Ann. § 25-6-101. See S.B. 58, 62d Leg., Gen. Sess., 2017 Utah Laws 204.

6

LLCs), was "operating as a wide-scale Ponzi scheme" at the time of the transfer. Id. The Receiver asserted that the transfer "is presumed to have been made with the actual intent to hinder, delay or defraud creditors" and so the "Receiver [was] entitled to avoid the Transfer and preserve it for the benefit of MSI's creditors and investors." Id.

The most natural reading of the Receiver's complaint is one to avoid Mr. Jacobson's transfer of the deeds of trust as a fraudulent conveyance. The action is clearly taken pursuant to the UVTA — a creditors' rights law — and the allegations in the complaint are that Mr. Jacobson was operating a wide-scale Ponzi scheme, and the transfer of the deeds was in furtherance of it and to defraud his creditors. The Receiver's action falls squarely within the policy's exception for lawsuits alleging a fraudulent transfer or conveyance.

The Bank argues there are multiple ways to read the Receiver's complaint, including that Mr. Jacobson was merely unauthorized to make the transfer on behalf of the LLCs. Under the Bank's reading, the exclusion does not apply, or at least *arguably* does not apply. In the face of uncertainty whether the lawsuit is excluded under the policy, the Bank argues First American should have defended until any doubts could be resolved. Aplee. Br. at 19–23. While caution may have counseled First American to defend, we disagree with the Bank that the law required it to do so.

First, even if Mr. Jacobson was unauthorized to transfer the deeds of trust — a covered event under the policy — that event could still be excluded from coverage if the unauthorized transfer was part of a fraudulent conveyance. Inclusion of an event on the "covered risks" is a necessary but not sufficient event for coverage; it also must not fall

7

within an exclusion from coverage. The complaint has to be read as a whole, and the clear import, indeed the essence of the Receiver's complaint, is that Mr. Jacobson engaged in a fraudulent conveyance in order to defraud creditors as part of his Ponzi scheme. That is an event explicitly excluded from coverage by the policy. Second, while the Bank recites case law with the adage "[w]hen in doubt, defend," Aplee. Br. at 18 (quoting Benjamin, 140 P.3d at 1215), there is little room for doubt about the scope of the exclusion from coverage here. And when the "language found within the collective 'eight corners' of these documents clearly and unambiguously indicates that a duty to defend . . . does not exist, the analysis is complete." Equine, 266 P.3d at 737.

## B. Breach of Contract for Duty to Indemnify

Under Utah law, the duty to indemnify is narrower than the duty to defend. If there was no duty to defend, there cannot be a duty to indemnify. See Fire Ins. Exch. v. Estate of Therkelsen, 27 P.3d 555, 561 (Utah 2001); Sharon Steel Corp. v. Aetna Cas. & Sur. Co., 931 P.2d 127, 133 (Utah 1997) ("We have previously held than an insurer's duty to defend is broader than its duty to indemnify.").

The Bank argues that, with the benefit of the settlement agreement, it is now clear that the Receiver's action was a covered event under the policy. According to the Bank, the settlement agreement shows that, even if the original complaint was ambiguous, the actual claim in the Receiver's action was that Mr. Jacobson was unauthorized to transfer the deeds of trust to the Bank on behalf of the LLCs. In the Bank's view, now that we can establish the basis for the suit, First American should be required to indemnify the Bank even if First American did not have a duty to defend initially. We disagree.

8

First, the Bank's position is inconsistent with Utah law. The duty to defend is broader than the duty to indemnify, but the duty to defend is determined from the face of the Receiver's complaint. If the Receiver's complaint was not enough to establish a duty to defend, how could the settlement agreement later create liability for indemnification? The Bank's position reverses the normal timeline, and it would effectively allow the duty to defend to attach retroactively. Second, we are hesitant to look to the settlement agreement for guidance because the parties certainly have an incentive to negotiate a settlement agreement that will create liability for the insurer, regardless of the true nature of the action.

## C.    Breach of Duty of Good Faith and Fair Dealing

First American owed no duty to defend or indemnify the Bank in the Receiver action. Therefore, First American did not violate the duty of good faith and fair dealing by denying coverage in response to both of the Bank's requests for coverage. First American reached the correct legal conclusion that it did not owe a duty to defend or indemnify; it reached this conclusion after complying with its duty to "diligently investigate the facts to enable it to determine whether a claim is valid," "fairly evaluate the claim," and "act promptly and reasonably in rejecting or settling the claim." Prince v. Bear River Mut. Ins. Co., 56 P.3d 524, 533 (Utah 2002). After its first denial and in response to the second request from the Bank, First American assigned the case to a second claims counsel who found that First American was not obligated to defend or indemnify the Bank, implicitly rejecting the Bank's argument that there remained alternative bases for coverage under the policy regardless of the exclusion for fraudulent

9

transfers. 1 J.A. 140–41. First American's legal duty of good faith and fair dealing did not require anything more.[4]

## D.    Damages

The district court made three damages awards: (1) for the amount of the Bank's settlement with the Receiver ($675,000), (2) for the amount of attorneys' fees the Bank was required to spend because First American did not defend it in the Receiver's action ($159,288), and (3) for the amount of attorneys' fees the Bank spent in this subsequent litigation against First American ($130,411.50). See 12 J.A. 2840; 13 J.A. 3155.

The first two damages awards were "general damages," that is, damages that flow directly or "naturally" from the contract breach itself. See Trans-Western Petroleum, Inc. v. U.S. Gypsum Co., 379 P.3d 1200, 1202 (Utah 2016). These are damages that arise under the policy's express terms. The third award was for "consequential damages," which are damages that do not arise directly from the breach of contract but are nonetheless foreseeable by the parties at the time of contract formation. Trans-Western, 379 P.3d at 1202. The district court granted attorneys' fees as consequential damages because it found First American had breached the implied term of good faith and fair dealing in its insurance contract with the Bank. Accordingly, it awarded the Bank the cost of this subsequent litigation against First American. We have already explained,

---

[4] There is no need to wade into the parties' dispute over the scope of the "fairly debatable" rule and its application in first-party claims versus third-party claims because First American did not breach any duty it owed to the Bank. Compare Aplt. Br. at 29–31, with Aplee. Br. at 27–29.

10

however, that First American did not breach its duty of good faith and fair dealing, so any award of damages arising from that implied term is improper. See id. at 1207 (noting that a litigant must show that consequential damages were caused by a contract breach). Because it was error to award attorneys' fees, arguments whether the Bank should have been awarded fees under its renewed motion for attorneys' fees or under Rule 54(d) are moot, and the Bank's cross-appeal under Rule 60 should be dismissed.

Because we conclude there was no duty to defend or indemnify, nor a breach of the implied duty of good faith and fair dealing, the damages awards cannot stand. On remand, the district court should vacate its orders and judgments to the contrary and enter judgment in favor of First American.

REVERSED and REMANDED. The Bank's cross-appeal, number 18-4037, is DISMISSED.