FILED
United States Court of Appeals
Tenth Circuit

August 22, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

TAMMY B. GEORGELAS, as Receiver
for Roger S. Bliss, an individual, and
Roger S. Bliss d/b/a Roger Bliss and
Associates Equities, LLC, a Utah limited
liability company, Roger Bliss and
Associates Club LLC, and Bliss Club LLC,

     Plaintiff - Appellee,

v.

DESERT HILL VENTURES, INC.,

     Defendant - Appellant.

No. 21-4036

_____

TAMMY B. GEORGELAS, as Receiver
for Roger S. Bliss, an individual, and
Roger S. Bliss d/b/a Roger Bliss and
Associates Equities, LLC, a Utah limited
liability company, Roger Bliss and
Associates Club LLC, and Bliss Club LLC,

     Plaintiff - Appellee,

v.

DAVID HILL,

     Defendant - Appellant.

No. 21-4037

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. Nos. 2:16-CV-00514-RJS & 2:16-CV-00522-RJS)**

_____

Stephen K. Christiansen, Christiansen Law, PLLC (Joshua B. Cutler with him on the briefs), Salt Lake City, Utah, for Defendant-Appellants.

Julianne P. Blanch, Parsons Behle & Latimer (Katherine E. Venti with her on the brief), Salt Lake City, Utah, for Plaintiff-Appellees.

_____

Before **MORITZ**, **EBEL**, and **EID**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

These consolidated cases arose from a 2015 Securities and Exchange Commission ("SEC") civil enforcement action against Roger Bliss, who ran a Ponzi scheme through his investment entities (collectively, "the Bliss Enterprise").[1] Mr. Bliss was ordered to repay millions of dollars to the victims of his fraudulent scheme, and the district court appointed Plaintiff-Appellee Tammy Georgelas as Receiver to investigate the Bliss Enterprise's books and seek to recover its property.

Defendant-Appellant David Hill was employed by the Bliss Enterprise from 2011 to 2015, providing administrative and ministerial services to the company. He received salary payments from the Bliss Enterprise both directly and through Defendant-Appellant Desert Hill Ventures, Inc. ("Desert Hill"), of which Mr. Hill was president. After the district court ordered Mr. Bliss to disgorge funds from his

---

[1] "Ponzi schemes are fraudulent business ventures in which investors' 'returns' are generated by capital from new investors rather than the success of the underlying business venture. This results in a snowball effect as the creator of the Ponzi scheme must then recruit even more investors to perpetuate the fraud." In re Armstrong, 291 F.3d 517, 520 n.3 (8th Cir. 2002).

2

scheme, the Receiver brought these actions against Mr. Hill and Desert Hill. The Receiver asserted that the Bliss Enterprise estates were entitled to recover the $347,000 in wages paid to Defendants, in addition to $113,878 spent by the Bliss Enterprise on renovations to Mr. Hill's house, under Utah's Uniform Fraudulent Transfers Act ("UFTA"), Utah Code Ann. § 25-6-1 et. seq. (2016).[2]

The district court granted summary judgment to the Receiver, finding that the wages received by Defendants from the Bliss Enterprise and the funds paid by the Bliss Enterprise for the renovations were recoverable by the estates under the UFTA. Defendants appealed to this court, asserting that the district court erred in denying their affirmative defense under Utah Code Ann. § 25-6-9(1) and in finding that the renovations were made for Mr. Hill's benefit, as required under Utah Code Ann. § 25-6-9(2)(a). The court agrees with Defendants and, accordingly, REVERSES the district court's summary judgment order and REMANDS for further proceedings.

## I.    BACKGROUND

### A. Factual History

The facts relevant to this appeal are largely undisputed, at least for the purposes of summary judgment, and any disputes will be construed in favor of the non-movant Defendants. See Banner Bank v. First Am. Title Ins. Co., 916 F.3d 1323, 1326 (10th Cir. 2019).

---

[2] In May 2017, Utah replaced the UFTA with the Utah Voidable Transactions Act. But because these cases were filed in 2016, the UFTA governs.

3

Roger Bliss operated the Bliss Enterprise through various entities from August 2008 through February 2015.  Mr. Bliss told investors that his day-trading could earn them at least 100% profits on their investments with minimal risk, and he presented falsified statements about his current accounts to back up those claims.  Over the course of the scheme, Mr. Bliss recruited more than 100 investors and raised approximately $27.3 million, but he only invested $14 million of those funds in the stock market.  Of the funds raised, Mr. Bliss lost about $3.5 million in trading, spent about $6.7 million on himself or family members, and returned about $16.3 million to investors.

In 2011, Mr. Bliss hired David Hill, through Mr. Hill's company Desert Hill, to perform "administrative and ministerial services" for the Bliss Enterprise.  App'x Vol. III at 481.  Mr. Hill worked full-time for the Bliss Enterprise from September 2011 to February 2015.  His regular tasks included updating investor spreadsheets with figures provided to him by Mr. Bliss, circulating statements and investor spreadsheets to investors, receiving and maintaining investor agreements between Mr. Bliss and investors, handling withdrawal requests and questions from investors to send to Mr. Bliss, coordinating Mr. Bliss's schedule, and maintaining Mr. Bliss's website.

The Bliss Enterprise paid Mr. Hill a monthly salary for his work, starting at $5,000 per month and increasing to as much as $8,000 per month.  In total, Mr. Hill received $347,000 in salary payments from the Bliss Enterprise, $317,000 of which was paid to Desert Hill and $30,000 of which was paid to Mr. Hill directly.

In 2014, several years into Mr. Hill's employment at the Bliss Enterprise, Mr. Hill's wife was diagnosed with Amyotrophic Lateral Sclerosis ("ALS"). Mr. Bliss then hired third-party contractors to renovate Mr. Hill's house to make it accessible for his wife's wheelchair. In total, Mr. Bliss paid $113,878 to the contractors for these renovations.

### B. Procedural History

On February 11, 2015, the SEC filed a civil enforcement action against the Bliss Enterprise in federal district court for several counts of securities fraud. On June 10, 2015, the court appointed Ms. Georgelas as Receiver. She took control of and investigated the Bliss Enterprise's books and records in an effort to identify and recover the estates' property. On April 19, 2016, the district court entered final judgment against Mr. Bliss in the civil enforcement action, enjoining him from violating securities laws and ordering him to disgorge $13,880,909.20 in profits he made from the scheme.[3]

On June 8, 2016, the Receiver filed the first of the lawsuits on appeal here against Defendant Desert Hill, and on March 30, 2017, the Receiver filed the second lawsuit against David Hill.[4] She alleged that the Bliss Enterprise operated as a Ponzi

---

[3] In a separate state-court criminal action, Mr. Bliss was convicted of four counts of securities fraud and one count of a pattern of unlawful activity and sentenced to a prison term plus more than $21 million in restitution.

[4] Both cases were filed in the United States District Court for the District of Utah, which had jurisdiction over these actions pursuant to 15 U.S.C. §§ 77v and 78aa and 28 U.S.C. §§ 754, 1331, and 1367. Because the SEC action in which the Receiver was appointed contained a federal question, the district court had ancillary jurisdiction over the state law claims as well. See Klein v. Cornelius, 786 F.3d 1310,

scheme and that both Defendants received fraudulent transfers from the Bliss Enterprise as defined by the UFTA, meaning the amounts paid to Defendants were recoverable by the estates.  On February 28, 2020, the Receiver filed Motions for Summary Judgment against the Defendants.  The district court granted the Receiver's Motions for Summary Judgment, holding that Defendants were liable to repay $460,878—the combined amount of the salary payments and renovation costs—to the estates.  Defendants then appealed.[5]

## II.    STANDARD OF REVIEW

This court "review[s] a summary judgment decision de novo."  Banner Bank, 916 F.3d at 1326.  "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court must draw all reasonable inferences in favor of the non-movant when examining the record.  Id.  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but once the moving party has done so, the burden shifts to the non-movant to establish a genuine issue of fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

1315 (10th Cir. 2015) (citing Donell v. Kowell, 533 F.3d 762, 769 (9th Cir. 2008)). This Court now exercises its jurisdiction under 28 U.S.C. § 1291.

[5] The district court entered two separate orders of final judgment below: one in favor of the Receiver against Desert Hill in the amount of $356,552.13, and one also in favor of the Receiver against Mr. Hill in the amount of $161,327.13.  Desert Hill and Mr. Hill filed timely notices of appeal of each final order to this court, which consolidated those two cases (Nos. 21-4036 and 21-4037) on appeal for all purposes.

### III.    DISCUSSION

The UFTA allowed creditors to avoid a debtor's fraudulent transfer "to the extent necessary to satisfy the creditor's claim." Utah Code Ann. § 25-6-8 (2016); see also Utah Code Ann. §§ 25-6-5, 6 (2016) (defining fraudulent transfers). Under the UFTA, "once it is established that a debtor acted as a Ponzi scheme, all transfers by that entity are presumed fraudulent." Wing v. Dockstader, 482 F. App'x 361, 363 (10th Cir. 2012) (unpublished) (citing Donell v. Kowell, 533 F.3d 762, 770 (9th Cir. 2008)). Where avoidance of a fraudulent transfer is appropriate, the creditor may recover the value of the transfer from "(a) the first transferee of the asset or the person for whose benefit the transfer was made; or (b) any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee." Utah Code Ann. § 25-6-9(2) (2016) (emphasis added). But at the same time, the UFTA provided an affirmative defense to transferees "who took in good faith and for a reasonably equivalent value," so that funds may not be recovered from them. Utah Code Ann. § 25-6-9(1) (2016).

Here, the Receiver asserted in her Motion for Summary Judgment that the payments to Defendants and for the renovations to their house by a third-party contractor were fraudulent transfers by the Bliss Enterprise, recoverable from Defendants as first transferees or persons for whose benefit the transfer was made. The Defendants in turn argued that the Receiver had not adequately proven that the Bliss Enterprise was a Ponzi scheme; that Defendants were entitled to an affirmative defense under § 25-6-9(1) of the UFTA for the salary payments received in good

7

faith for reasonably equivalent value; and that the funds for the renovations were not recoverable under the UFTA because they were paid to the contractors for the benefit of Mr. Hill's wife, not Mr. Hill.  See Utah Code Ann. § 25-6-9(2)(a).

The district court held that the Bliss Enterprise did operate as a Ponzi scheme, and so it applied the "Ponzi presumption" that all of its transfers—including those to Defendants—were fraudulent.  App'x Vol. III at 492.  It further rejected Defendants' asserted defense under § 25-6-9(1) and held that Mr. Hill was the person for whose benefit the transfer for the renovations was made under § 25-6-9(2)(a), justifying summary judgment on both of the Receiver's claims.

On appeal, Defendants no longer contest that the Bliss Enterprise is properly considered a Ponzi scheme, but they challenge the district court's conclusions that (1) the salary payments to Defendants were not made in exchange for "reasonably equivalent value" as defined by the UFTA, and (2) the money paid by Bliss to the contractors for the renovations to Mr. Hill's house were for the benefit of Mr. Hill as defined by the UFTA.  Applying de novo review and using the summary-judgment standard of proof, this court finds error in the district court's conclusions on both issues.

### A.  Mr. Hill's Wages

The $347,000 in wages paid by the Bliss Enterprise to Defendants are not recoverable by the Receiver if the Defendants took those funds "in good faith and for a reasonably equivalent value."  Utah Code Ann. § 25-6-9(1) (2016).  Both "good faith" and "reasonably equivalent value" are essential elements of this defense,

8

meaning that the Defendants needed to present a genuine dispute of material fact as to each of them to avoid summary judgment in the Receiver's favor. But the Receiver did not seek summary judgment on whether Defendants acted in good faith, so the district court assumed—as will we—that the Defendants did take the salary payments in good faith for purposes of summary judgment.[6] Thus, the only question before us on this issue is whether the salary payments were "reasonably equivalent value" for the services performed by Defendants for the Bliss Enterprise, or at least whether there is a genuine dispute of material fact on that issue. Our answer is yes.

As an initial matter, there is no dispute that the amounts Defendants were paid constituted reasonable fees for the services they provided. The dispute on appeal instead revolves around what counts as "value" in the context of Ponzi schemes as a matter of law. The district court held, and the Receiver argues on appeal, that Mr. Hill's administrative work in "ensuring the smooth operation of the Bliss Enterprise and helping to entice new investors into the scheme" legally could not be considered reasonably equivalent value "because it helped perpetuate the scheme's fraud and exacerbated the harm to the victims." App'x Vol. III at 496.

We do not agree that the services rendered by Mr. Hill as part of a valid employment contract ceased to provide "value" simply because they indirectly helped Mr. Bliss pull off the logistics of his fraud, and we assume for the purposes of this appeal Mr. Hill's good faith. "The primary consideration in analyzing the exchange

---

[6] In other words, we assume, without deciding, that Defendants had no knowledge that any of Mr. Bliss's activities were fraudulent or otherwise unlawful.

of value for any transfer is the degree to which the transferor's net worth is preserved." Klein v. Cornelius, 786 F.3d 1310, 1321 (10th Cir. 2015) (quoting S.E.C. v. Res. Dev. Int'l, LLC, 487 F.3d 295, 301 (5th Cir. 2007)). The UFTA states that "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied." Utah Code Ann. § 25-6-4 (2016).

Here, Mr. Hill provided basic administrative services to the Bliss Enterprise, pursuant to his employment agreement; the Bliss Enterprise incurred a debt to Mr. Hill once he performed the services. Paying his wages discharged that debt, and so the monthly salary payments had no effect on the net worth of the Bliss Enterprise. In this sense, the "value" of Mr. Hill's work was no different from that of a janitorial company paid to clean Mr. Bliss's office, and those funds would not be recoverable from the janitorial company under the UFTA. See In re Universal Clearing House Co., 60 B.R. 985, 998 (D. Utah 1986). The fact that Mr. Hill's work was more directly related to the day-to-day operations of the Ponzi scheme may have bearing on whether Mr. Hill acted in good faith—that is, whether he knew of the fraud or not—but it does not mean that Hill's salary payments were not exchanged for "reasonably equivalent value" in the form of his administrative work. And this latter question of value is the only one we consider today, since we are assuming good faith in this appeal.

Some courts have held that transfers are not made for "reasonably equivalent value" when the transferee (even a good-faith transferee) is being paid to directly

10

solicit people to invest in and to be defrauded by the Ponzi scheme. E.g., Warfield v. Byron, 436 F.3d 551, 554–55 (5th Cir. 2006); Miller v. Taber, No. 1:12-CV-74-DN, 2014 WL 317938, at *2 (D. Utah Jan. 29, 2014) (unpublished); Wing v. Holder, No. 2:09-CV-118, 2010 WL 5021087, at *2 (D. Utah Dec. 3, 2010) (unpublished). Defendants call this approach the "referral-fee exception" to the standard definition of "value" under the UFTA, Aplt. Br. at 28, because it has only been applied to deny the § 25-6-9(1) defense to transferees who were paid by a Ponzi scheme for the specific purpose of referring or recruiting new investors to the scheme. Other courts have explicitly rejected this approach to the recovery of Ponzi scheme referral fees, finding that the referral-fee exception is contravened by the generally accepted meaning of "value" and creates an unworkable line-drawing problem. E.g., Windham v. Allen, No. 2:18-CV-00054-JNP, 2020 WL 6743268, at *3 (D. Utah Nov. 17, 2020) (unpublished); In re Fin. Federated Title & Tr., Inc., 309 F.3d 1325, 1332 (11th Cir. 2002). This Court has not previously relied on the referral-fee exception or any outgrowths of it. See Wing v. Dockstader, 482 F. App'x 361, 365–66 (10th Cir. 2012) (unpublished) (recognizing the split of authority on the referral-fee exception but finding the issue forfeited).

We decline to weigh in on the general propriety of the referral-fee exception under the UFTA in this case, because it is simply not presented by these facts. Mr. Hill was not soliciting investors to join the Ponzi scheme. While new investors may have read the website he maintained and existing investors may have spoken with him as a conduit to Mr. Bliss, his compensation was not contingent on bringing

11

people into the scheme.  The evidence, construed in Defendants' favor and limited to

the discrete issue presented to us on appeal, indicates that Mr. Hill's work was purely

administrative and administered in good faith.  The district court concluded that Mr.

Hill's work was "intimately intwined" with the investment scheme, which it believed

removed any "value" from his work for the purposes of the UFTA.  App'x Vol. III at

496.  But the phrase "intimately intwined" lacks independent meaning; anyone from

landlords to utility providers to accountants could be "intimately intwined" with such

a scheme if the concept was stretched far enough, yet we do not think that the

compensation for those services would be recoverable under the UFTA.  See In re

Universal Clearing House Co., 60 B.R. at 999.

We thus evaluate Mr. Hill's work under the typical UFTA definition of

"value," and find that his salary payments were made for the reasonably equivalent

value of the debt incurred by the Bliss Enterprise for Mr. Hill's administrative

services.  These transfers thus had no impact on the company's net worth, and so the

Receiver has failed to demonstrate on this record that, as a matter of law, the

Defendants are not entitled to the § 25-6-9(1) defense based on the "reasonably

equivalent value" element.[7]  The district court's order of summary judgment for the

Receiver on this issue, requiring Defendants to repay their $347,000 in salary

payments, is therefore REVERSED.

---

[7] Again, we offer no opinion on the good-faith element of the defense, which is not before the Court and would be a question for the jury at trial.

12

### B. Renovations to Mr. Hill's House

Whether the Receiver is entitled to summary judgment to recover the $113,878 paid by the Bliss Enterprise to independent contractors to renovate Mr. Hill's house depends on a different provision of the UFTA. This transaction, too, is subject to the Ponzi presumption that it was a fraudulent transfer. Mr. Hill cannot rely on the § 25-6-9(1) affirmative defense because he exchanged no value at all for Bliss's renovations, given that Bliss paid the third-party contractors to do the work on the house without asking for anything in return from Mr. Hill. Mr. Hill was not a direct transferee of the funds—only the contractors were, but the Receiver did not seek to recover the funds from them. Rather, the Receiver sought to recover the renovation money from Mr. Hill not because he was a first or subsequent transferee but because he was "the person for whose benefit the transfer is made," against whom judgment is allowed under § 25-6-9(2)(a) of the UFTA.

The Receiver asserts that the transfer was made to benefit Mr. Hill because the renovations allowed "an ailing member of Mr. Hill's family—his wife—to move more freely and comfortably around the house," and enabled Mr. Hill to "more easily support his wife as her primary caregiver," particularly given that he worked from home. Aple. Br. at 19. The district court agreed, and further stated that "Hill continues to live in the home and has retained all the value from the remodel," given that he owns the house. App'x Vol. III at 499. Accordingly, the court held that the Receiver was entitled to recover the $113,878 from Mr. Hill.

13

Mr. Hill argues on appeal that the Receiver presented no evidence that he directly benefited from the renovations in terms of his role as a caregiver or in terms of the value added to his home, precluding summary judgment on those bases. To establish a genuine issue of material fact as to whether he benefited, Mr. Hill points to the affidavit he submitted to the district court that stated

> The work done on my home was solely for the benefit of my wife, and only involved modifications to make my house accessible to my wife while she used her wheelchair. The modifications were made to ADA standards and included:
>     a. The installation of zero-threshold egress doors;
>     b. Widening doorways and hallways; and
>     c. Ensuring that there were no steps or "lips" from room to room.

App'x Vol. VI at 964. Thus, Mr. Hill asserts that the sole "person for whose benefit the transfer was made" was not him, but his wife. Id. at 978.

For the purposes of summary judgment, the Receiver asks for too many inferences from the meagre evidence presented regarding whether and how Mr. Hill benefited from the transfer to pay for the renovations. Viewing the facts in the light most favorable to Mr. Hill, we cannot assume that the transfer which paid for the renovations to the house increased its value and thus provided a benefit to Mr. Hill. We also cannot assume that the transfer made Mr. Hill's role as a caregiver easier. There is likewise no evidence to demonstrate that Mr. Hill took on or was freed from any legal obligations as a result of Mr. Bliss's payment to the contractors. Consequently, the Receiver failed to make the required showing below that Mr. Hill "actually received a benefit" and that any benefit "derived directly from the transfer."

14

In re Brooke Corp., 488 B.R. 459, 471 (Bankr. D. Kan. 2013).[8] See also In re Meredith, 527 F.3d 372, 376 (4th Cir. 2008) ("[A] person must actually receive a benefit from the transfer in order to be an 'entity for whose benefit' the transfer was made . . . . [O]ur purpose 'is to look through the form of the transaction and determine which entity actually benefitted from the transfer.'" (quoting In re Compton Corp., 831 F.2d 586, 595 (5th Cir. 1987))). Because a genuine issue of material fact remains regarding whether Mr. Hill was the person for whose benefit the $113,878 transfer by Mr. Bliss was made under the UFTA, we hold that summary judgment in the Receiver's favor on this question was inappropriate. We thus REVERSE and REMAND for further proceedings.

## IV.   CONCLUSION

Based on the foregoing, we REVERSE the district court's summary judgment order as to both the Bliss Enterprise's transfer of salary payments to the Defendants and Mr. Bliss's transfer of funds for renovations to Mr. Hill's house. We REMAND for further proceedings consistent with this opinion.

---

[8] Brooke Corp. and related authorities did not interpret the precise language in the UFTA that is at issue here, instead analyzing a phrase in a federal bankruptcy statute: "the entity for whose benefit such transfer was made." 11 U.S.C. § 550. We think this language is sufficiently analogous to Utah's statutory text to provide a baseline approach for identifying "the person for whose benefit the transfer is made" under § 25-6-9(2)(a) of the UFTA. See Klein v. King & King & Jones, 571 F. App'x 702, 704 n.2 (10th Cir. 2014) (unpublished) (citing federal bankruptcy statute as persuasive authority for interpreting UFTA provision).