FILED
**United States Court of Appeals**
**Tenth Circuit**

**September 19, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BEHAVIORAL MEDICINE
CONSULTING, LLC, a Montana limited
liability company; KEITH BROWN, M.D.,
an individual,

     Plaintiffs - Appellants,

v.

CHG COMPANIES, INC., d/b/a
CompHealth, a Delaware corporation,

     Defendant - Appellee.

No. 23-4047
(D.C. No. 2:19-CV-00967-JNP)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

When entities contract as part of a business relationship, we generally hold

them to the benefit of the agreed-on bargain even if one party subsequently claims it

expected a deal contrary to the contract's express, clear, and unambiguous terms.

Plaintiff Behavioral Medicine Consulting, LLC and Defendant CHG Companies,

Inc., d/b/a CompHealth signed a services contract that allowed Defendant to both

place Plaintiff Keith Brown, M.D. ("Dr. Brown") in an employment position and

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

cancel that placement.  Defendant exercised both rights the next week when it placed Dr. Brown in a position but canceled it shortly afterward.  Plaintiffs complain that the cancelation constituted breach of contract, breach of implied duties, and breach of fiduciary duty; contradicted Plaintiffs' justified expectations; conflicted with Plaintiffs' economic relations; and contravened public policy.  These claims fail because Defendant merely availed itself of the benefit of its bargain.  Our jurisdiction arises under 28 U.S.C. § 1291.  We affirm.

## I.

Defendant locates and places medical providers in *locum tenens* positions—temporary work assignments at facilities such as hospitals.  Defendant agreed to provide *locum tenens* staffing services for Western State Hospital in Lakewood, Washington ("Hospital").  Under this agreement, Defendant located providers for temporary assignments at the Hospital, subject to the Hospital's approval, and then contracted with the providers to create their Hospital assignments.  The Hospital agreed to pay a buyout fee of at least $30,000 if Defendant presented a provider to the Hospital and the Hospital independently employed the provider within the year ("Buyout Fee").

In late June 2019, after learning the Hospital needed a psychiatrist, Defendant located and presented Dr. Brown—a psychiatrist and the sole member of Behavioral Medicine Consulting—to the Hospital.  The Hospital approved Dr. Brown, and Dr. Brown agreed to fill a six-month *locum tenens* position at the Hospital.  But before the relationship between Dr. Brown and the Hospital could move forward, Defendant

2

and Plaintiffs had to formalize their relationship.  So, on July 10, 2019, Dr. Brown (signing on behalf of his limited liability company) and Defendant executed a Professional Services Agreement ("Agreement") setting the terms under which Defendant could place Dr. Brown in *locum tenens* positions.

The Agreement acknowledged Dr. Brown's status as an independent contractor and his right to decline opportunities that Defendant offered.  The Agreement required Defendant to send Plaintiffs written confirmation of assignments and incorporated by reference those confirmation letters.  The Agreement also expressly stated it did not guarantee work for Plaintiffs, and set forth broad reasons under which Defendant could unilaterally cancel an assignment even after confirmation.

Section Four of the Agreement governed Defendant's right to cancel a *locum tenens* placement.  Specifically, Section 4.1 provided the following terms:

> CompHealth may immediately cancel this Agreement or any Assignment without notice or liability to [Behavioral Medicine Consulting] (except for payment of undisputed Services rendered up to the date of cancellation) . . . upon CompHealth's reasonable determination that [Dr. Brown] is not insurable under CompHealth's malpractice policy and/or does not meet CompHealth credentialing standards . . .

Section 4.4 provided additional cancelation terms:

> CompHealth may terminate this Agreement or any Assignment upon thirty (30) days' notice to [Behavioral Medicine Consulting].  In the event that CompHealth or Client cancels an Assignment with less than thirty (30) days' notice for any reason other than those allowed in Paragraph 4.1 above, CompHealth's maximum liability to Entity shall be the amount of Compensation [Behavioral Medicine Consulting]

3

would have earned for [scheduled workdays within thirty days of the cancelation notice].

Section Three of the Agreement governed Plaintiffs' obligations if Defendant introduced Dr. Brown to a facility and Dr. Brown subsequently provided services to the facility outside of his *locum tenens* placement:

> During the Term of this Agreement and for a period of two (2) years after its termination or expiration or pursuant to state law, [Behavioral Medicine Consulting] agrees to: a) immediately notify [Defendant] if [Behavioral Medicine Consulting] accepts a temporary or permanent position with any Client for whom [Behavioral Medicine Consulting] performed, or was introduced to perform, Services; and b) not provide locum tenens services to Clients for whom [Behavioral Medicine Consulting] performed, or was introduced to perform, Services unless such locum tenens services are furnished through [Defendant].

Dr. Brown and Defendant exchanged multiple emails discussing the ongoing credentialing process. Two days before the parties executed the Agreement, Defendant informed Dr. Brown it needed materials for the credentialing department. A few hours after Dr. Brown returned the executed Agreement, Defendant told Dr. Brown it would send the Agreement to another employee to start the credentialing process. The next day, Defendant sent Dr. Brown a formal letter confirming his Hospital assignment "subject to the cancellation provisions of the Agreement." The same day, Defendant began a multi-day email exchange with Dr. Brown explaining that it required additional credentialing information and references, which Dr. Brown attempted to provide. Dr. Brown does not dispute that he received and read these communications.

4

Consistent with Defendant's normal procedures, Defendant began its credentialing process for Dr. Brown soon after receiving the executed Agreement. Defendant quickly determined that Dr. Brown did not qualify for credentialing in an inpatient psychiatrist position because he lacked in-hospital psychiatric experience within the prior two years—a qualification Defendant's malpractice carrier required before it would insure Dr. Brown.  On July 12, Defendant informed Dr. Brown of the credentialing and insurance issues.  Defendant followed up with an email on July 15 canceling the Hospital assignment.  Dr. Brown asserted that his telepsychiatry experience should qualify as inpatient experience.  Defendant recommended to Dr. Brown that he obtain additional inpatient experience (not telepsychiatry) to qualify for Defendant's malpractice insurance policy.  Dr. Brown declined to do so.

The following week, the Hospital expressed to Defendant some interest in hiring Dr. Brown independently; Defendant did not inform Dr. Brown.  During the same timeframe, Dr. Brown also communicated his continuing interest to at least one individual at the Hospital but received an unfavorable reply.  The Hospital posted at least one psychiatrist job opening on its website but did not directly invite Dr. Brown to apply, and Dr. Brown did not apply.

Plaintiffs sued Defendant, alleging breach of the Agreement's express terms and implied covenants, breach of fiduciary duty, interference with prospective economic relations, and material misrepresentation.  Defendant moved for summary judgment.  The district court granted the motion and entered judgment for Defendant.

The district court later denied Plaintiffs' Rule 59(e) motion to alter or amend the judgment.  Plaintiffs appeal both rulings.

## II.

We review a grant of summary judgment de novo to determine whether a genuine dispute about a material fact prevents us from affirming judgment as a matter of law.  See Georgelas v. Desert Hill Ventures, Inc., 45 F.4th 1193, 1197 (10th Cir. 2022) (quoting Banner Bank v. First Am. Title Ins. Co., 916 F.3d 1323, 1326 (10th Cir. 2019) and then quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  We view the facts and reasonable inferences in the light most favorable to the nonmoving party.  Banner Bank, 916 F.3d at 1326 (citing Birch v. Polaris Indus., Inc. 812 F.3d 1238, 1251 (10th Cir. 2015)).  But we limit our review to evidence that the parties sufficiently brought to the district court's attention.  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).

We review a district court's ruling on a Federal Rule of Civil Procedure 59(e) motion for an abuse of discretion.  Adams v. Reliance Standard Life Ins. Co., 225 F.3d 1179, 1186 n.5 (10th Cir. 2000) (quoting Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997)).

## III.

## A.

Plaintiffs contend the district court erroneously granted summary judgment to Defendant on the breach of contract claim because a genuine issue of material fact exists as to whether Defendant properly canceled the Hospital assignment.  Plaintiffs

6

claim Defendant *unreasonably* determined that Dr. Brown lacked sufficient credentials to meet Defendant's standards and to receive coverage under Defendant's malpractice policy.  These unreasonable determinations, Plaintiffs argue, did not constitute grounds for cancelation under Section 4.1 of the Agreement, which requires a *reasonable* determination.  But Plaintiffs did not sufficiently raise this argument before the district court.

We generally require a party wishing to raise an issue on appeal to raise and develop it before the district court.  Lyons v. Jefferson Bank & Tr., 994 F.2d 716, 721 (10th Cir. 1993) (holding that we do not consider theories not developed at the district court).  As a matter of fairness and judicial economy, we frown upon parties who mention an issue in only a perfunctory and undeveloped manner to the district court and then present a stronger, more nuanced argument on appeal.  Folks v. State Farm Mut. Auto. Ins. Co., 784 F.3d 730, 741 (10th Cir. 2015) (requiring sufficient clarity and specificity to preserve an argument for appeal).  Allowing such an approach would encourage parties to withhold arguments and positions in the district court in hopes they could later convince an appellate court to reverse if they received an unfavorable district court judgment.  In the summary judgment context, when a party fails to provide the district court with specific citations to relevant evidence— as Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure requires—we do not require the district court to search the record itself to uncover relevant materials.  Murphy v. City of Tulsa, 950 F.3d 641, 645 (10th Cir. 2019) (quoting Adler, 144 F.3d at 162) (holding that we will not reverse based on materials that the parties did

not properly present to the district court); see also Adler, 144 F.3d at 672 (citing Celotex Corp. v. Catreet, 477 U.S. 317, 323 (1986); Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996); Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024–25 (10th Cir. 1992); Downes v. Beach, 587 F.2d 469, 472 (10th Cir. 1978)) (holding that a party must meet its burden by making its case through references to the record).

In their complaint and summary judgment briefing before the district court, Plaintiffs argued Defendant breached the Agreement by applying an unreasonable *standard* to determine that Dr. Brown lacked sufficient credentials and that Defendant's malpractice policy could not provide coverage for him.[1]  Specifically, Plaintiffs asserted that Defendant breached the Agreement when it terminated the Hospital assignment because Dr. Brown's telepsychiatry experience should qualify as inpatient experience under Defendant's credentialing standard.  Not until the summary judgment hearing did Plaintiffs present some version of their unreasonable *application* theory to the district court and suggest that Dr. Brown may, in fact, have qualifying inpatient experience other than telepsychiatry.  Even assuming Plaintiffs could raise the theory for the first time at the summary judgment hearing, they did not clearly present the issue to the district court and did not reference specific citations within the record supporting their position.

---

[1] On appeal, Plaintiffs did not develop their argument as to use of an unreasonable standard, so we do not consider whether that argument could support Plaintiffs' breach of contract claim.  See Adler, 144 F.3d at 679 (citing Fed. R. App. P. 28(a)(6)).

8

On appeal, Plaintiffs cite pages in the record where they allegedly raised this issue.[2]   These citations point to evidence that the *Hospital* approved Dr. Brown's credentials, to expert testimony that Defendant's *standard* was unreasonable, and to arguments that Defendant's policy not to accept telepsychiatry experience as inpatient experience was unreasonable.  But the Agreement provided for termination based on Defendant's standard, not another entity's standard, so the Hospital's approval of Dr. Brown's credentials is irrelevant.  And Plaintiffs never presented evidence to the district court that Defendant's own standard—the contracted-for standard—allowed telepsychiatry to satisfy inpatient experience requirements.  In short, even at the summary judgment hearing, Plaintiffs still effectively argued that Defendant breached the Agreement by applying an unreasonable *standard*.  Their argument did not clearly notify the district court of any genuine issue of material fact as to Defendant's current appellate argument that Defendant unreasonably *applied* its own standard—regardless of the reasonableness of the standard.

Because Plaintiffs did not sufficiently raise this issue below, they have forfeited their argument.  And Plaintiffs do not argue for plain-error review on appeal.  See Folks, 784 F.3d at 741 (holding that failure to argue plain error "surely marks the end of the road" for forfeited theories) (quoting Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1131 (10th Cir. 2011)).  So we will not reach the question of

---

[2] "For each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on."  10th Cir. R. 28.1(A).

whether Defendant breached the express terms of Section 4.1 of the Agreement by unreasonably applying its own standard.[3]

B.

Plaintiffs alternatively argue that Defendant breached the implied covenant of good faith and fair dealing. Under Utah law, "an implied covenant of good faith and fair dealing inheres in every contract." Eggett v. Wasatch Energy Corp., 94 P.3d 193, 197 (Utah 2004) (citing Exploration, Inc. v. State, 24 P.3d 966, 971 (Utah 2001); Malibus Inv. Co. v. Sparks, 996 P.2d 1043, 1048 (Utah 2000)). A violation of this covenant constitutes breach of contract. Id. (citing St. Benedict's Dev. Co. v. St. Benedict's Hosp., 811 P.2d 194, 200 (Utah 1991)). To comply with their implied duties under this covenant, contracting parties must act consistent with the contract's purpose and the other party's expectations, and may not intentionally injure each other's right to receive the benefit of the bargain. Id.; St. Benedict's, 811 P.2d at 199. Utah courts look to a contract's terms and the parties' course of dealing to understand the parties' intent, but will not imply duties from a party's expectations when such expectations lack a basis in a contract's plain and unmistakable language. St. Benedict's, 811 P.2d at 198.

Plaintiffs claim they justifiably expected that (1) Defendant had completed its credentialing review before signing the Agreement and confirming Dr. Brown's

---

[3] Because we do not hold that termination under Section 4.1 was improper, we do not reach Defendant's alternative argument or the parties' arguments as to a damages cap.

assignment; (2) Defendant would not require experience beyond that listed on Dr. Brown's curriculum vitae; (3) Defendant, after canceling the assignment, would play middleman between Dr. Brown and the Hospital to assist with direct employment; and (4) Defendant would require no Buyout Fee from the Hospital after canceling the assignment.[4]  But these expectations directly conflict with the Agreement.

Section 4.1 of the Agreement allowed Defendant to "immediately cancel" any confirmed assignment "without notice or liability to [Plaintiffs] . . . upon [Defendant's] reasonable determination that [Dr. Brown] is not insurable under [Defendant's] malpractice policy and/or does not meet [Defendant's] credentialing standards."  Because Defendant could cancel a previously confirmed assignment based on the results of a credentialing review, the Agreement's express terms preclude any implied duty for Defendant to complete its credentialing review or fully accept Dr. Brown's credentials before confirming the Hospital assignment.  And Section 3 of the Agreement imposed a duty on *Plaintiffs* to communicate with Defendant if Dr. Brown gained employment directly from the Hospital.  This provision negates any alleged implied duty for *Defendant*—after canceling the Hospital assignment—to continue to relay information to Plaintiffs or help Dr. Brown gain direct employment from the Hospital.  This provision also implies the existence of an outside obligation between the Hospital and Defendant, negating Plaintiffs'

---

[4] Plaintiffs also invoke their breach of contract argument that Defendant failed to make a "reasonable determination" when canceling the Hospital assignment under Section 4.1 of the Agreement.  But Plaintiffs forfeit, and we do not reach, this argument for the same reasons we explain above.

11

alleged expectation that Defendant would not require the Hospital to pay the Buyout Fee if the Hospital directly employed Dr. Brown.[5]

Plaintiffs argue that their course of dealing justifies their expectations and urge us to consider conversations between the parties and the confirmation letter from Defendant. But these communications—even when we view them in the light most favorable to Plaintiffs—fail to support Plaintiffs' alleged expectations. Each relevant email conversation between Dr. Brown and Defendant demonstrates that Defendant's credentialing process had not concluded upon execution of the Agreement, and no conversation represented otherwise. The confirmation letter from Defendant expressly confirmed the Hospital assignment *subject to the Agreement's cancellation terms*. And Dr. Brown directly contacted the Hospital to inquire about independent employment—which contradicts his assertion that he relied on Defendant to continue playing middleman.

For these reasons, the express terms of the Agreement and the parties' course of dealing did not support Plaintiffs' alleged expectations, but instead ran contrary to those expectations. Plaintiffs did not justifiably expect Defendant to complete credentialing within an earlier timeframe, accept Dr. Brown's experience from his curriculum vitae, assist Dr. Brown in obtaining a full-time job at the Hospital, or forfeit a Buyout Fee. So Defendant's failure to comply with these expectations did

---

[5] Plaintiffs urge us to hold the Buyout Fee requirement invalid for public policy reasons. Plaintiffs forfeited this theory by failing to present it to the district court, and we, therefore, do not reach it. See Lyons, 994 F.2d at 721.

not violate any implied duties and did not "injure [Plaintiffs'] right to receive the benefits of the contract." See Eggett, 94 P.3d at 197 (citing St. Benedict's, 811 P.2d at 199). Instead, Defendant merely availed itself of the benefits for which it bargained. Thus, the district court did not err in ordering judgment as a matter of law for Defendant on this issue.

C.

Plaintiffs also claim Defendant breached its fiduciary duties because it acted in its own self-interest—and not in Plaintiffs' best interest—when it canceled the Hospital assignment. A breach of fiduciary duty claim requires an underlying fiduciary relationship. See City of Grantsville v. Redevelopment Agency of Tooele City, 233 P.3d 461, 473 (Utah 2010). The district court found no fiduciary relationship existed between Defendant and Plaintiffs and entered judgment for Defendant on the breach of fiduciary duty claim. The district court did not err in so finding.

Under Utah law, fiduciary relationships result from mutual consent that one party will act on behalf of and subject to the control of the other party. Grantsville, 233 P.3d at 473 (quoting Wardley Corp. v. Welsh, 962 P.2d 86, 89 (Utah Ct. App. 1998)). Parties can manifest consent contractually or by implication in certain circumstances. Id. (citing First Sec. Bank of Utah N.A. v. Banberry Dev. Corp., 786 P2d 1326, 1332 (Utah 1990)). Fiduciary relationships can arise based on long-established relationships of trust if one party relinquishes control over his own decision-making. See Von Hake v. Thomas, 705 P.2d 766, 770 (Utah 1985). But

13

fiduciary relationships do not form solely based on arm's length transactions. Gold Standard, Inc. v. Getty Oil Co., 915 P.2d 1060, 1064 (Utah 1996) (citing Sugarhouse Fin. Co. v. Anderson, 610 P.2d 1369, 1373 (Utah 1980); Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp., 850 P.2d 447, 454 (Utah 1993)).

The touchstone of a fiduciary relationship is the principal-agent relationship. Utah courts consider whether a confidential relationship exists such that the principal places particular confidence in the agent, who imposes superiority and control over the principal's property, interest, or authority. First Sec. Bank of Utah N.A. v. Banberry Dev. Corp., 786 P.2d 1326, 1333 (Utah 1990) (quoting Dennison State Bank v. Madeira, 640 P.2d 1235, 1241 (Kan. 1982)). No fiduciary relationship exists absent these circumstances. Id.

Plaintiffs argue that Defendant was their agent because Defendant acted on their behalf to make a *locum tenens* placement. But the Agreement and relevant interactions do not reflect a relationship in which Plaintiffs surrendered control and allowed Defendant to make decisions on their behalf. Instead, as Plaintiffs concede, the Agreement required Defendant to present information about a prospective placement to Dr. Brown, who could determine whether he wished to pursue the opportunity. Defendant could not bind or obligate Plaintiffs without Plaintiffs' specific consent and participation in the negotiations. These circumstances do not constitute a surrender of control reflecting a confidential relationship that implicates fiduciary duties. Thus, the district court did not err in entering judgment as a matter of law for Defendant on this issue.

14

D.

Plaintiffs claim that Defendants' canceling the Hospital assignment alternatively constituted intentional interference with prospective economic relations between Plaintiffs and the Hospital.  To establish this claim, Plaintiffs "must prove (1) that [Defendant] intentionally interfered with [Plaintiffs'] existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." Eldridge v. Johndrow, 345 P.3d 553, 556 (Utah 2015) (quoting and overruling on other grounds Leigh Furniture & Carpet Co. v. Isom, 657 P.2d 293, 307 (Utah 1982)).  The district court ruled that as a matter of law no evidence showed improper means—and thus that Plaintiffs' claim of intentional interference with economic relations failed.

Under Utah law, a party acts with improper means only when it violates a statute, regulation, established industry standard, or recognized common-law rule. C.R. England v. Swift Transp. Co., 437 P.3d 343, 353 (Utah 2019) (quoting Leigh Furniture, 657 P.2d at 308).  Plaintiffs claim Defendant acted with improper means because it violated an established industry standard when it withheld from Dr. Brown information that the Hospital maintained an interest in hiring him independently even after Defendant canceled the *locum tenens* assignment.  But the record lacks any evidence that Defendant's withholding of information violated an established standard within the *locum tenens* industry—or any industry.  And Plaintiffs do not argue any other theory under which Defendant acted with improper means.  Thus, Plaintiffs fail to identify a genuine issue of material fact as to whether Defendant

15

acted with improper means, and the district court did not err in ordering judgment as a matter of law for Defendant on this issue.

E.

Finally, Plaintiffs claim they can void the Agreement and receive rescission damages because Defendant materially misrepresented the Agreement's terms, thereby inducing Plaintiffs to sign the Agreement. The district court ruled at summary judgment that no evidence existed of material misrepresentation. Plaintiffs claim they signed the Agreement only because Defendant represented the assignment was a "done deal" without a cancelation option. Plaintiffs also argue that Defendant failed to disclose material facts about its internal credentialing process's timing and requirements, and urge that this nondisclosure constitutes misrepresentation under Section 161 of the Restatement (Second) of Contracts.

Utah expressly adopted the Restatement cause of action for material misrepresentation. Miller v. Celebration Mining Co., 29 P.3d 1231, 1235 (Utah 2001) (applying Restatement (Second) of Contracts § 164(1) (1981)). Section 164(1) provides: "If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." Under these authorities, Plaintiffs' claim fails unless they *justifiably* relied on Defendant's alleged misrepresentations. See id.

As we held above, Plaintiffs did not justifiably expect that the assignment was a "done deal" without possibility of cancelation after Plaintiffs executed the

16

Agreement and received the confirmation letter.  Nor did Plaintiffs justifiably expect

that Defendant completed credentialing before confirming the assignment.  Both the

Agreement and the confirmation letter's express terms informed Plaintiffs otherwise.

And, as explained above, the parties' course of dealing does not justify Plaintiffs'

alleged expectations either.  The district court did not err in ordering judgment as a

matter of law for Defendant on this issue.

IV.

Finally, Plaintiffs moved to alter or amend the district court's order of

summary judgment under Federal Rule of Procedure Rule 59(e) because the district

court allegedly misapprehended material facts or misapplied the law.  A district court

may grant a Rule 59(e) motion "when 'the court has misapprehended the facts, a

party's position, or the controlling law.'"  Nelson v. City of Albuquerque, 921 F.3d

925, 929 (10th Cir. 2019) (quoting Servants of the Paraclete v. Does, 204 F.3d 1005,

1012 (10th Cir. 2000)).

Plaintiffs' opening brief contains only a "bare bones" argument concerning the

district court's denial of their Rule 59(e) motion.  Although unclear, Plaintiffs appear

to argue that the district court mistakenly overlooked material issues of fact that

precluded summary judgment, and that their Rule 59(e) motion put the district court

on notice of the fact issues.[6]  Our precedent is clear: a "bare assertion does not

---

[6] Even giving Plaintiffs' cursory briefing the benefit of the doubt, their Rule 59(e) argument seems, at best, a rehash of the arguments they make in prior sections of their brief.  Because we reject those arguments, Plaintiffs' arguments would still fail even if we allowed them to be repackaged under Rule 59(e).  Rule 59(e)

17

preserve a claim, particularly when, as here, a host of other issues are presented for review." Craven v. Univ. of Colo. Hosp. Auth., 260 F.3d 1218, 1226 (10th Cir. 2001) (quoting Ent. Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1217 (9th Cir. 1997); and then citing United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).  Because Plaintiff's Rule 59(e) argument is conclusory and not sufficiently developed for meaningful review, we do not reach it.

    AFFIRMED.

Entered for the Court


Joel M. Carson III
Circuit Judge

---

contemplates a mistake by the district court, and here the district court committed no reversible error.